# EXHIBIT A
# "Part 3"

1          HEARING OFFICER FRONCZAK:  Government Exhibit

2  10 is accepted into the record.

3  **(Government's Exhibit 10 received in evidence.)**

4          MR. BOYER:  Okay.  I'm sorry.

5          BY MR. BOYER:

6      Q.   Ms. Valls, can you kind of help us out here?

7  So is this first letter here, do you recognize that?

8      A.   Yes.

9      Q.   What is this letter?

10     A.   This is a letter that we send as a follow-up

11 to a warning conference.  It basically memorializes

12 that we had a warning conference and what was discussed

13 at that warning conference.

14     Q.   All right.  And this indicates that the

15 warning conference was held on July 10, 2012, at this

16 location here?

17     A.   That is correct.

18     Q.   All right.  Did you participate in that --

19     A.   Yes, I did.

20     Q.   -- warning conference?

21     A.   Yes.

22     Q.   Who else was there?  Was Mr. Frazier there?

23     A.   Mr. Frazier was there, and my supervisor was

24 there.  I don't recall anybody else being there.

25     Q.   Okay.  And what was -- do you remember what

 1  was discussed during that warning conference?

 2      A.   We would have discussed the report of

 3  violations that we gave him, any corrective actions

 4  that he's taken at that point in time, and how he's

 5  going to move forward.

 6      Q.   Okay.  Now, I notice that page 3 of this

 7  exhibit, right, the letter's dated July 10th.  This

 8  appears to be a warning letter.

 9      A.   Correct.

10      Q.   Was that -- so a warning letter was issued in

11  addition to the warning conference?

12      A.   That's correct, yes.

13      Q.   Okay.  And finally the third letter there,

14  that appears to be informing the notification of the

15  warning conference; is that correct?

16      A.   Yes.

17      Q.   That would have been sent to Mr. Frazier?

18      A.   Yes, that's correct.

19      Q.   All right.  Understanding then that this one

20  went to a warning conference, was there any history or

21  compliance problems prior to this warning conference?

22      A.   Yes.

23      Q.   Okay.  Can you speak to that?

24      A.   Going back to the original letters that we're

25  talking about, in Exhibit 1 --

89

 1        Q.    Government Exhibit 1.

 2        A.    -- it does have all of the compliance history

 3    in here.  So we did have an inspection in 2010, and he

 4    was cited for various violations dealing with 4473s and

 5    the A&D book.  That was 2010.  In 2011, it looks like

 6    we also did an inspection in 2011.  He was also cited

 7    for violations of the A&D and 4473.

 8        Q.    And that actually is the one here --

 9        A.    Yes.

10        Q.    -- the warning conference that came following

11    that 2011 compliance inspection; is that correct?  Or,

12    no, 2012.

13        A.    2012.

14        Q.    Yeah.

15        A.    So, yeah.  This would be before we had the

16    warning conference.

17        Q.    Okay.

18        A.    2012 was the warning conference.  Generally,

19    we do a warning letter first, and then if they have

20    repeats and violations, more instances, then we go to a

21    warning conference.

22        Q.    I see.  And so just to clarify, there was

23    this 2010 compliance inspection?

24        A.    It looks to me there was a 2010 and a 2011

25    compliance inspection, and then we went back again in

1    2012.

2        Q.    Okay.  And as a result of the 2010 compliance

3    inspection, did ATF take any action?

4        A.    It looks like he received a warning letter

5    per the compliance history.

6        Q.    Is that one of the reasons why a warning

7    conference was held following the 2012 inspection?

8        A.    That would be correct.  If he had repeat

9    violations, if he had higher instances of violations,

10   we would have proceeded to a warning conference, yes.

11       Q.    Within the warning letter, is part of the

12   intention to put the federal firearms licensee on

13   notice that additional violations could potentially

14   lead to revocation of the license?

15       A.    Yes, that's correct.

16       Q.    Would that have also been the similar intent

17   and purpose of the warning conference?

18       A.    Yes, absolutely.

19            MR. BOYER:  And I'm going to mark this again

20   Government Exhibit 11.  This is a two-page document,

21   and once again, this is going to be an acknowledgement

22   of federal firearms regulations, this one dated

23   November 4, 2014.  And a copy to the Hearing Officer,

24   Mr. Frazier, court reporter, and to Ms. Valls.

25            HEARING OFFICER FRONCZAK:  Government Exhibit

1    11 is accepted into the record.

2    **(Government's Exhibit 11 marked and received in**

3    **evidence.)**

4              BY MR. BOYER:

5         Q.   Ms. Valls, do you recognize this document?

6         A.   Yes, I do.

7         Q.   Similar to what we've see, the previous

8    Government Exhibits 9 and 8 and 7?

9         A.   Yes.

10        Q.   And is this your signature on the second

11   page?

12        A.   Yes, it is.

13        Q.   All right, 2014 did this also then accompany

14   an inspection?

15        A.   Yes, it did.

16        Q.   Okay.  And you participated in the inspection

17   of Mr. Frazier's pawn shop?

18        A.   Yes, I did.

19        Q.   And as before, it looks like you had gone

20   through and acknowledged that you had discussed each of

21   the requirements under the federal firearms regulations

22   with Mr. Frazier?

23        A.   Not with Mr. Frazier.  This is signed by Bill

24   Hoffman.

25        Q.   Okay.  Who is Bill Hoffman?

1     A.   He is the firearms manager.  I'm not sure

2   exactly what his title was, but he was the one who was

3   doing all the firearms transactions at that time.  So

4   Mr. Frazier had delegated him to actually participate

5   in the compliance inspection and go over the rules and

6   regulations with me.

7     Q.   Okay.  And this would be a notice here on the

8   second page then.  The signature then, that's of

9   William Hoffman, Bill Hoffman?

10    A.   That's correct, yes.

11    Q.   Okay.  That's 11.  I'm handing you one more

12  document in case you didn't have enough already.

13         MR. BOYER:  I'm marking this Government

14  Exhibit 12.  Government Exhibit 12 is going to be a

15  one-page document titled documents provided to and

16  reviewed with the FFL.  I'm handing a copy to the

17  Hearing Officer, Mr. Frazier, court reporter.

18         HEARING OFFICER FRONCZAK:  Government Exhibit

19  12 is accepted into the record.

20  **(Government's Exhibit 12 marked and received in**

21  **evidence.)**

22         BY MR. BOYER:

23    Q.   I'm handing it to you, Ms. Valls.  Ms. Valls,

24  do you recognize this document?

25    A.   Yes, I do.

1      Q.   What is this?

2      A.   This is a listing of all the documents that

3   we -- the hard copy documents that we provide to the

4   FFL or their representative.

5      Q.   Okay.  And I note here, it looks like -- so

6   these were the documents then that would have been

7   issued to Frazier's Pawn Shop --

8      A.   That's correct.

9      Q.   -- if I'm reading it right, the licensee's

10  name?

11     A.   Yes.

12     Q.   And, again, whose signature do we have at the

13  bottom?

14     A.   William Hoffman.

15     Q.   And he is signing it in his capacity as it

16  says industry member?

17     A.   Yes.  Mr. Frazier gave him permission to go

18  ahead and do the compliance inspection with us and sign

19  on his behalf.

20     Q.   Okay.  And if you can, it looks like there's

21  checkmarks in each of these boxes.

22     A.   Yes.

23     Q.   What are the checkmarks, and what is this

24  indicating?

25     A.   We marked off every document that we gave to

94

1   him that's on the list.  The backward checks are mine

2   because I'm left handed.

3        Q.   Okay.

4        A.   So I completed it.

5        Q.   All right.  And why do you, I guess, have

6   this form?

7        A.   Just so that we can document that not only we

8   went over the acknowledgement, but we also gave them

9   the forms that were related to the acknowledgement of

10  federal firearms regulations.

11       Q.   Okay.  All right.  Ms. Valls, I'm going to

12  fast forward in -- well, let's see here.  Before I go

13  there, 2014 inspection that you participated in that.

14  Were there any violations noted in your inspection in

15  2014?

16       A.   Yes.

17       Q.   Take a look at Government Exhibit 1.

18       A.   Yes, there were.

19       Q.   Okay.  Can you generally speak to the

20  violations?

21       A.   Again, just acquisition/disposition

22  violations as well as 4473 violations.

23       Q.   Okay.  And did ATF take any action following

24  that inspection?

25       A.   We sent him a warning letter.

95

1       Q.    And in that warning letter, as done

2    previously, would Mr. Frazier have been put on notice

3    that any potential further violations could lead to

4    revocation of his license?

5       A.    Yes.

6       Q.    Now, fast forwarding in time, I understand

7    that you received a call on May 3, 2017, from

8    Mr. Hoffman, Bill Hoffman.

9       A.    That's correct.

10      Q.    All right.  And what was that call?

11      A.    Mr. Hoffman called because he said that he

12   had taken in a firearm, I'm not sure if was on pawn or

13   they purchased it, but he took in a firearm and he said

14   that he did not think that the firearm was configured

15   correctly, that it had a part that shouldn't be on it.

16   So he said that he had taken the part off of the

17   firearm, but he wanted an agent to come by to look at

18   the firearm to determine if that part was supposed to

19   be on it or not be on it.

20      Q.    Um-hum.  Did he mention that he had sold the

21   firearm?

22      A.    No, he did not.

23      Q.    Okay.  What did you do after receiving this

24   phone call?

25      A.    I referred the call over to Special Agent

```
 1   Martin and let him know what I talked about with
 2   Mr. Hoffman and asked him if he could go out and look
 3   at the firearm that Mr. Hoffman had.
 4       Q.   Now, of course, this eventually became a
 5   criminal investigation?
 6       A.   Yes.
 7       Q.   And you're aware of that?
 8       A.   Yes.
 9       Q.   All right.  So this was May 3, 2017, that you
10   received this call.  There was a search warrant
11   actually that was performed the following year, right,
12   in March --
13       A.   That's correct.
14       Q.   -- of 2018?
15       A.   Yes.
16       Q.   All right.  Did you have any involvement in
17   that search warrant or reviewing the records that were
18   recovered as a part of that search warrant?
19       A.   Yes.
20       Q.   Can you tell us about that?
21       A.   There was a team of IOIs that were put
22   together, including our supervisor, and we went in with
23   our purpose of doing inventory to see if there was
24   anything, any firearms they had on the premises that
25   were not logged into their books.
```

1    Q.   Okay.  Did you find any firearms that were

2  not logged into their books?

3    A.   Initially we found 10 firearms that were not

4  logged into their books, and later we found that there

5  were 2 in the book that were not in the correct order.

6  So we didn't find them initially.  So we ended up

7  having eight firearms on the premises that were not yet

8  logged into the A&D book when we were there.

9    Q.   And just to be clear, I understand per our

10  regulations that a licensee has until the end of the

11  next business day to log those firearms into their A&D

12  book?

13    A.   That's correct.

14    Q.   Were any of those firearms, you know,

15  received into Mr. Frazier's inventory during that time

16  frame?

17    A.   I have no way of knowing that.

18    Q.   Okay.

19    A.   Yeah.

20    Q.   To your knowledge, were any of those firearms

21  received within that short 24-hour period?

22    A.   Not to my knowledge.

23    Q.   Okay.  All right.  And then did you also

24  participate in the review of the records that were

25  recovered from Mr. Frazier's shop?

 1       A.   I did.

 2       Q.   And there were a number of violations that

 3  were noted; is that correct?

 4       A.   That's correct.

 5            MR. BOYER:  Mr. Hearing Officer, I'm marking

 6  Government Exhibit 13.  This is going to be an 87-page

 7  document consisting of 29 4473s and 51 number of

 8  violations identified therein.  I'm handing a copy to

 9  the Hearing Officer, Mr. Frazier, the court reporter.

10            HEARING OFFICER FRONCZAK:  Government Exhibit

11  Number 13 is accepted into the record.

12  **(Government's Exhibit 13 marked and received in**

13  **evidence.)**

14            BY MR. BOYER:

15       Q.   Ms. Valls, I'm handing you a copy of

16  Government Exhibit 13 as well.

17       A.   Okay.

18       Q.   Now, Ms. Valls, this is some of the records

19  that were recovered during the search warrant from

20  Mr. Frazier's pawn shop.  And if I go through, I note

21  on page 3, for example, of Government Exhibit 13, there

22  is a box around number 29.

23       A.   That is correct.

24       Q.   What is that box?

25       A.   That box indicates an error.  We go through

99

1   the 4473s looking for errors.  And so when we make

2   copies of them to put them into our databases, we put a

3   box around whatever we found to be wrong.  In this

4   case, it's blank.

5        Q.  Okay.  And so I was going to say, what is the

6   error?  It's blank.  What should be within this box?

7        A.   It should be the written out number of how

8   many firearms were sold in this transaction.  So in

9   this case, there was one sold as shown above.  So they

10  should have o-n-e written out as one.

11       Q.  Okay.  And is that a violation of federal

12  firearms regulations?

13       A.  That's correct, yes.

14       Q.  Okay.  Let's move to the next 4473.  It looks

15  like this one would be on the second page --

16       A.  Yes.

17       Q.  -- of that one.  I notice on the bottom there

18  are two boxes there.

19       A.  Um-hum.

20       Q.  Again, does that indicate a violation?

21       A.  Yes, because it's blank, and it should have

22  had a date and a signature there.

23       Q.  Okay.  And by not including -- and the

24  signature would be for the transferee or the buyer's

25  signature --

1     A.    That's correct.

2     Q.    -- as well as the recertification date?

3     A.    Yes.

4     Q.    All right.  And in not having the transferee

5  or buyer sign, is that a violation of the federal

6  firearms regulations?

7     A.    Yes.

8     Q.    Okay.  I'm not going to go through all 87

9  pages, but let's go -- I would like to go through just

10  one more here.  And it looks like on the next -- so

11  this would be the third -- each Form 4473 I should note

12  is three pages each; is that correct?

13     A.    It's actually more because it has

14  instructions, but the pages that you write on are three

15  pages, yes.

16     Q.    And we've only included the pages that you

17  write on in the Government exhibit?

18     A.    That's correct.

19     Q.    Okay.  So this would be moving then to the

20  third 4473 that we've included here.  It looks like

21  we've got the same error for that or same violation?

22     A.    Yes, that's correct.

23     Q.    Here, where the transferee or buyer did not

24  sign?

25     A.    Yes.

101

1    Q.   All right.  And you had an opportunity, again

2   you don't need to go through all of them, but you've

3   gone through and identified all the errors and

4   violations contained in these 4473s, correct?

5    A.   Yes.

6    Q.   And each of those have been indicated with a

7   box?

8    A.   Yes.

9    Q.   Okay.  I would also note that I had said when

10   introducing the exhibit, that there were 29 4473s.  The

11   number of violations were 51.

12    A.   That's correct.

13    Q.   Can you explain why that might be?

14    A.   Well, each form may have multiple.  So the

15   second one we looked at, it was missing a signature and

16   a date.  So that would be two on one form, two errors

17   on one form.

18    Q.   Okay.  Very good.

19        MR. BOYER:  I'll mark this Government Exhibit

20   14.  This will be a 111-page document consisting of 37

21   ATF Form 4473s and indicating 64 violations.  I'm

22   handing a copy to the Hearing Officer, Mr. Frazier, the

23   court reporter.

24        HEARING OFFICER FRONCZAK:  Government Exhibit

25   14 is accepted into the record.

1

2    **(Government's Exhibit 14 marked and received in**

3    **evidence.)**

4            BY MR. BOYER:

5        Q.   Ms. Valls, I'll continue to add to your

6    stack.  Again, as previously indicated, these were

7    records that were recovered from Frazier's Pawn Shop.

8    And, again, it appears to have been compiled the

9    written portions of the Form 4473, correct?

10       A.   That's correct.

11       Q.   Okay.  Let's take a look then at a few of

12   these here then.  So on the second page, in this case,

13   there is information written within here, the box is

14   around the certification date, but there is a date in

15   there.  Why would that date or why would that be

16   indicated as a violation?

17       A.   That date is 1/30/2016, and if you look down

18   at 19.a, which would be the date that the background

19   check was called in, that is 1/20/2017 which also

20   corresponds with number 37 on the next page which is

21   1/30/2017.  So they have the incorrect date in the one

22   that is boxed.

23       Q.   So the date that should be listed there in

24   block 15 should be the same as that listed in box 19.a

25   as well as in block 37?

103

1       A.   In this case, yes.

2       Q.   Okay.  That's what -- it should be the same.

3       A.   It should be.

4       Q.   In this instance, it's not.

5       A.   In this case, it's not.

6       Q.   And is that a violation of the federal

7   firearms regulations?

8       A.   Yes.

9       Q.   The next 4473, transaction number it looks

10   like 5433, also we've got a marker around block 15, and

11   is that for the same problem, same violation?

12       A.   It has an incorrect date.  It actually has

13   the purchaser's birth date.

14       Q.   Which was not --

15       A.   The date in there.

16       Q.   -- April 13, 2017?

17       A.   No.

18       Q.   All right.  The next one, let me see if I --

19   and it looks like the next -- okay.  And that continues

20   throughout the remainder of the Government Exhibit 14;

21   is that correct?

22       A.   It appears so.  On 5471 is not a date issued,

23   but there is an error on it.

24       Q.   Yeah.

25       A.   You want to do that one?

104

1    Q.   Yeah, maybe let's do that just to clarify the

2   record.   There's 12.a on transaction number 5471.

3   You've highlighted that --

4    A.   Yes.

5    Q.   -- right?  Why would that be -- is that the

6   same type of violation as that of listing the wrong

7   date in block 15?

8    A.   It's the same citation --

9    Q.   Okay.

10    A.   -- in the federal firearms regulations, yes.

11    Q.   Okay.  And so in this case, what should be

12   listed?

13    A.   They should have marked their country of

14   citizenship, and that is blank, the purchaser of the

15   firearm.

16    Q.   Okay.  Now, is the -- and I should note that

17   the violations, so when going through, you know, you're

18   acknowledgement form and your inspections, when

19   speaking to the licensees, would you have informed them

20   that they needed to ensure that the transferee or the

21   buyer completely fill out 4473?

22    A.   Yes, and actually as we go through it, and we

23   find errors, we usually take the forms to them and

24   explain to them, you've got a bunch that are blank on

25   this number, or you've got a bunch of incorrect dates.

1   So you need to make sure that you really look at those

2   pieces of information for the next time.

3       Q.   And is that what you, in fact, did for

4   inspections that you participated in, in 2012 and 2014

5   with Mr. Frazier?

6       A.   Yes, that's standard operating procedure for

7   us.

8       Q.   You would have informed them not only of the

9   violation but followed that up with the 4473 that shows

10  them what the error is?

11      A.   Yeah, we usually show them the form as we do

12  the inspection, and then when we go over the

13  violations, we'll say, okay, remember we showed you

14  these numbers were not correct, and that's how we would

15  do it, yes.

16      Q.   And were some of the violations that you

17  noticed, as you're going through the records that were

18  recovered pursuant to the search warrant, were some of

19  the violations noted repeat violations?

20      A.   Yes.

21      Q.   Okay.  In other words, they had been

22  violations noted on previous inspections, but they

23  continued to have the same problem?

24      A.   That's correct.

25          MR. BOYER:   The next exhibit, Government

1  Exhibit 15, is going to be a 15-page document

2  consisting of five 4473s with five violations.  For

3  clarification, I think I left this off previously for

4  the record, but Government Exhibit 13 would be for

5  violation of 478.21(a).  Government Exhibit 14 was a

6  compilation of those 4473s that included violations of

7  478.124(c)(1).  Government Exhibit 15 is going to be a

8  compilation of those 4473s that include violations of

9  478.124(c)(3)(i).

10       And, again, I'm marking Government Exhibit

11  15.  A copy for the Hearing Officer --

12  **(Government's Exhibit 15 marked for identification.)**

13       THE WITNESS:  Well, that's the whole stack

14  you gave me.

15       MR. BOYER:  Oh, did I give you the whole

16  thing?  Hand a copy to Mr. Frazier and to the court

17  reporter.

18  **(Government's Exhibit 15 received in evidence.)**

19       BY MR. BOYER:

20    Q.   And, Ms. Valls, you have a copy as well?

21    A.   I do.

22    Q.   Okay.  Let's take a look at this one.  On the

23  second page there, there is a block 18.a, and it's

24  around the information listed under expiration date of

25  identification.

1    A.   That's correct.

2    Q.   What is the -- why is that highlighted?

3    A.   It's an expired driver's license at the time

4  of this transaction.  So we have in number 15, a

5  certification date of 4/24/17, and we also have a 19.a,

6  4/24/17.  So this license was expired at the time of

7  this transaction.

8    Q.   All right.  And is that -- in not having or

9  not using an expiration date, is that a violation of

10  478.124(c)(3)(i)?

11    A.   That's correct.

12    Q.   Okay.  It appears on the second 4473, which

13  would be transaction number 5443, we have the same

14  information highlighted in block 18.a.

15    A.   That's correct.

16    Q.   And can you tell us, is that for the same

17  reason?

18    A.   They put a birth year instead of putting the

19  correct year of expiration.  So we don't know if this

20  license was expired or not.  It was an incorrect date.

21    Q.   Certainly the date, if we go by the date

22  alone, the date is well expired?

23    A.   Yes, absolutely.

24    Q.   Of that license.

25    A.   Yes.

1    Q.   The next one would be it looks like

2   transaction number 5536.  We've got two boxes that are

3   highlighted on that page, and that's going to be in

4   block 18.a as well as in 19.d.  Same problem in 18.a

5   with the expiration date?

6    A.   Yes.

7    Q.   Okay.  We don't know if that is the actual

8   date that is listed on the license.  Certainly if it

9   was, that's an expired date?

10    A.   That's correct, yes.

11    Q.   Okay.  Indicate that the license is expired.

12   And then 19.d, why is that highlighted?

13    A.   Well, that is not a violation of the current

14   ones that we're talking about, 124(c)(3)(i).

15    Q.   Okay.

16    A.   This is a different violation, but this one

17   is a violation because it is blank.  We have in 19.c,

18   marked a delayed response, but we don't have a final

19   response which would be marked in 19.d.

20    Q.   Okay.  And so when we go through then and we

21   go through the other exhibits, we may see this Form

22   4473, transaction number 5536, under that --

23    A.   That's correct.

24    Q.   -- specific violation?

25    A.   Yes, that's correct.

1      Q.  So each 4473, if they have multiple, could

2  potentially contain not only multiple variations of the

3  same code, but different provisions of the regulations?

4      A.  Yes.

5      Q.  And that's the case here?

6      A.  Yes.

7      MR. BOYER:  I'm marking Government Exhibit

8  16.  That's going to be a 96-page document consisting

9  of 32 Form 4473s with 32 -- indicating 32 violations of

10  478.124(c)(3)(iv) or 4.  Government Exhibit 16, I'm

11  handing a copy to the Hearing Officer, Mr. Frazier,

12  court reporter.

13      HEARING OFFICER FRONCZAK:  Government Exhibit

14  16 is accepted on the record.

15  **(Government's Exhibit 16 marked and received in**

16  **evidence.)**

17      BY MR. BOYER:

18      Q.  Ms. Valls, going through -- start on the

19  first page of Government Exhibit 16, note down here,

20  block 12.a is highlighted.

21      A.  Correct.

22      Q.  And we've seen that before.  This is where

23  the transferee or buyer should be marking country of

24  citizenship?

25      A.  That's correct.

110

1    Q.   And by not including that information, would

2  this be considered a violation of 478.124(c)(3)(iv)?

3    A.   It would be considered a violation, but I

4  can't tell you if it would be that one because, like I

5  said, we had multiple on the forms.

6    Q.   Right, right.

7    A.   I believe the (c)(3)(iv) is more under the

8  background check section.

9    Q.   Right, which if we turn to the second page

10  then, we've got 19.c is highlighted.

11   A.   That's correct.

12   Q.   And why is it highlighted?

13   A.   That would be the initial response that they

14  receive from NICS when they call in the background

15  check, and it's blank.  So we don't know what the

16  answer actually was or if it was a delayed response or

17  what have you.

18   Q.   Okay.  And what's the point of -- why the

19  requirement to have the licensee fill this information

20  out?

21   A.   So we know if the transaction was immediately

22  proceeded, whether it was delayed, if it was denied.

23  The only way we have of knowing now is that we have a

24  number up here for our next transaction number, but we

25  don't know if it was delayed or if it was unapproved.

111

1    Q.   And by not including that information, is

2  that a violation of 478.124(c)(3)(iv)?

3    A.   Yes.

4    Q.   Looking at the next 4473, which would be

5  transaction number 5696, it appears we have the second

6  page of that 4473, the same problem with 19.c?

7    A.   That's correct.

8    Q.   And, again, same issue?

9    A.   Yes.

10    Q.   We don't know whether that was given as a

11  result of the next background check received, delayed,

12  denied?

13    A.   That's correct.

14    Q.   And finally the next 4473, again not going

15  through all of them, but this would be for transaction

16  5739, 19.c again is missing the information?

17    A.   That's correct.

18    Q.   Okay.  And the remaining 4473s, I know

19  previously and in preparation for this hearing, you had

20  an opportunity to go through and review the

21  information?

22    A.   Yes.

23    Q.   It does, in fact, contain 32 violations.  So

24  each Form 4473 would contain a violation --

25    A.   That's correct.

112

1      Q.   -- of this provision?

2      A.   Yes.

3           MR. BOYER:  I'm marking as Government Exhibit

4   17 a three-page document consisting of one Form 4473

5   indicating one violation of 478.124(c)(4).  I'm handing

6   a copy to the Hearing Officer, to Mr. Frazier, the

7   court reporter, and to Ms. Valls.

8   **(Government's Exhibit 17 marked for identification.)**

9           BY MR. BOYER:

10     Q.   Ms. Valls, looking at this, if I go to the

11  third page, I note that there is a box, and let's see,

12  under block 27, around the word "pistol."

13     A.   That's correct.

14     Q.   Why would that be highlighted?

15     A.   This was the firearm that was sold, that they

16  are listing out the information for the firearm, and if

17  you look at number 16, they have marked off long gun,

18  and also from my experience, it being a Remington 870,

19  it is a long gun as well as number 38 saying it's a 12-

20  gauge, which would indicate a long gun as well.  So

21  they wrote the incorrect type of firearm that they

22  sold.

23     Q.   And by not listing the correct firearm sold,

24  that would be a violation of 478.124(c)(4)?

25     A.   Yes.

113

1      Q.  And, again, this would have been part of your

2 discussion with the licensee when going over his

3 requirements under the federal firearms regulations?

4      A.  Yes.

5         MR. BOYER:  If you will, just give me one

6 moment here.

7         HEARING OFFICER FRONCZAK:  While you're

8 taking a moment, I'll mention that Government Exhibit

9 17 is accepted into the record.

10 **(Government's Exhibit 17 received in evidence.)**

11         BY MR. BOYER:

12      Q.  And I know I haven't done this for all of

13 them, but I would note, so if you refer back to

14 Government Exhibit 1 --

15      A.  Um-hum.

16      Q.  -- and you look at page 4 of the exhibit,

17 number 3 is listed on top.

18      A.  Okay.

19      Q.  And you've got in subparagraph 1(g),

20 violation of 27 C.F.R. 478.124(c)(4)?

21      A.  Yes.

22      Q.  All right.  Same provision that we're talking

23 about here?

24      A.  That's correct, yes.

25      Q.  Okay.  And in that instance, so as part of

114

1  the 2010 inspection, then you had three instances of

2  noncompliance?

3      A.   That's correct.

4      Q.   And so this would be a repeat violation?

5      A.   Yes.

6      Q.   Okay.  I know I haven't done that with every

7  single one.

8           MR. BOYER:  I'm marking as Government Exhibit

9  18 a 12-page document consisting of four Form 4473s,

10 containing four violations of 478.124(c)(5).  I'm

11 handing a copy to the Hearing Officer, Mr. Frazier, the

12 court reporter, Ms. Valls.

13          HEARING OFFICER FRONCZAK:  Government Exhibit

14 18 is accepted into the record.

15 **(Government's Exhibit 18 marked and received in**

16 **evidence.)**

17          BY MR. BOYER:

18     Q.   Ms. Valls, I'm looking at the first Form 4473

19 which would be transaction number 5695.  If I look on

20 page three, block 37 appears to have a bold block

21 around the date listed there.

22     A.   Yes.

23     Q.   Why is that?

24     A.   That date is incorrect.  If you look at

25 number 15, it is dated 8/23/17, and 19.a is also dated

115

1  8/23/17.  Therefore, the date of the transaction cannot

2  be the day before those dates.  That date would be

3  incorrect.

4      Q.   So if you go strictly by the dates, this

5  would suggest that the firearm was transferred prior to

6  completion of the -- well, prior to the certification

7  date as well as the date listed in 19.a?

8      A.   Correct.

9      Q.   And is not having that date accurate, is that

10  a violation of 478.124(c)(5)?

11      A.   Yes.

12      Q.   Moving to the next Form 4473, it would be

13  transaction 5213.  It appears this again, block 37 has

14  the incorrect date, and can you tell us why that is

15  highlighted?

16      A.   Again, if you go back to 15, block 15, the

17  date is 1/26/17.  The date is also 1/26/17 for 19.a.

18  And the date in block 37 is 1/25/17.

19      Q.   All right.  And the next 4473, that would be

20  transaction number 5909.  It, too, contains the same

21  issue in block 37?

22      A.   That's correct.

23      Q.   Just give me one moment.  Referring then

24  back, Ms. Valls, to Government Exhibit 1, this would be

25  subparagraph 1(h), indicate there the violation of

116

1  178.124(c)(5) [sic], correct?

2      A.   That's correct, yes.

3      Q.   In that instance, there was five violations

4  noted?

5      A.   Yes.

6      Q.   Okay.  So, again, this would indicate a

7  repeat violation?

8      A.   Yes.

9      Q.   And it appears in 2011, down at the bottom of

10  that page, 5(c).

11      A.   Yes.

12      Q.   Same violation?

13      A.   Yes.

14      Q.   And to paragraph 9(f), same violation?

15      A.   Yes.

16      MR. BOYER:  I'm marking Government Exhibit

17  19.  It's going to be a nine-page document consisting

18  of three Form 4473s and consisting of two violations of

19  478.126(a).  I'm handing a copy to the Hearing Officer,

20  Mr. Frazier, the court reporter, and Ms. Valls.

21  **(Government's Exhibit 19 marked for identification.)**

22      BY MR. BOYER:

23      Q.   All right.  Ms. Valls, I guess let's go to

24  the third page of Government Exhibit 19.  That would be

25  for transaction number 5407.

117

1     A.   Wait a minute.  I have 5239 on top.  Is this

2   part of -- the bottom part of somebody's.  I have two

3   on the bottom.  Let me check.  5239 --

4          MR. BOYER:  Yeah, it should be.  If everybody

5   could do a count.

6          THE WITNESS:  Yeah, 5239 should be on the

7   bottom.  So somebody's missing a 5239.

8          MR. BOYER:  Let me check.  Maybe the court

9   reporter.  I believe I shortchanged the court reporter.

10          HEARING OFFICER FRONCZAK:  While you're doing

11   that, I'm just going to say Government Exhibit 19 is

12   accepted into the record.

13   **(Government's Exhibit 19 received in evidence.)**

14          MR. BOYER:  I'm handing a complete copy of

15   Government's Exhibit 19 to the court reporter.

16          BY MR. BOYER:

17     Q.   Ms. Valls, looking then -- let's start this

18   over.  So I've got transaction number 5407.

19     A.   Correct, yes.

20     Q.   And if I turn to the third page, I've got

21   here a block around information there at the top of the

22   page.  What's the block indicate?

23     A.   It indicates the firearms that were sold to

24   this particular individual, and in this case, these are

25   two handguns that were sold on the same day to the same

1   individual.

2       Q.   All right.  And why would that information be

3   highlighted?

4       A.   The licensee is required to report multiple

5   sales of handguns, which means that they have sold more

6   than one handgun to the same individual within a 5-day

7   period.  In this case, it was on the same day.  And we

8   did not find any corresponding multiple sale form

9   filled out, nor did we have any on our trace history

10  reports.

11      Q.   Would that failure to notify then at the

12  multiple sale be a violation of 478.126(a)?

13      A.   Yes, that's correct.

14      Q.   All right.  And then I note that -- so we've

15  got only two violations but we've got two more 4473s?

16      A.   That's correct.

17      Q.   And can you explain why that is the case?

18      A.   On Form 5244, we have a handgun that was sold

19  to a Rodney Ruppenthal on February 10, 2017, and then

20  we also have a firearm, a handgun, that was sold to

21  Rodney Ruppenthal, same address on both forms, on

22  2/8/17.  So this indicates that it was more than one

23  handgun sold to the same individual within a 5-day

24  period that a multiple should have been filled out for.

25      Q.   And none was actually filed?

119

1     A.   We did not find any in Frazier's files, nor

2   did we find any on our trace history report, no.

3     Q.   Referring back then to Government Exhibit 1

4   and looking on the sixth page of that exhibit, number 5

5   listed up top.

6     A.   Yes.

7     Q.   It appears that this would be -- the same

8   violation was noted in 2014 --

9     A.   That's correct.

10     Q.   -- during that inspection?

11     A.   Yes.

12     Q.   So, again, in this we have another repeat

13   violation?

14     A.   Yes.

15         MR. BOYER:   I'm marking as Exhibit 20 a

16   three-page document consisting of one Form 4473

17   containing three violations of 478.102(a).  And a copy

18   for the Hearing Officer, Mr. Frazier, and to the court

19   reporter, Ms. Valls.

20         HEARING OFFICER FRONCZAK:   Government Exhibit

21   20 is accepted into the record.

22   **(Government's Exhibit 20 marked and received in**

23   **evidence.)**

24         BY MR. BOYER:

25     Q.   And as indicated, there were three violations

120

1    here.  Can you speak to those three violations?

2        A.   Well, the first on 12.a is not actually part

3    of 102(a).

4        Q.   Oh, okay.

5        A.   But they failed to answer that question.  It

6    is blank, and that's why that one is a violation, but

7    it is not part of 102(a).

8        Q.   Okay.

9        A.   So 102(a) is on the second page where we have

10   19.b and 19.c blank, 19.b being the NICS transaction

11   number when the licensee is given when they call in a

12   background check and get a proceed.  And then 19.c

13   would be where they would indicate whether they got a

14   delayed response, proceed response, or denied response.

15   In both cases, they are blank, and we have nothing to

16   indicate that a background check was actually called

17   in.  And I will also add that on 21 in West Virginia,

18   we do have something that will override the background

19   check.  So we will look at number 21 to see if the

20   purchaser provided anything, and in this case, they did

21   not.  So we have nothing to show that they were

22   approved to get this firearm.

23       Q.   Okay.  And when you say 21, that's block 21

24   on --

25       A.   Block 21, yes.

121

1      Q.   Okay.  That's where it would be annotated

2  that there's an exception to this?

3      A.   That's correct.

4      Q.   Okay.  And by not listing that information,

5  there's no way that again a background check was

6  performed?

7      A.   There's no way that we can tell if a

8  background check was performed, no.

9      Q.   Okay.  And if there's no way to confirm that

10  one was done and that, in fact, one wasn't done, would

11  that be a violation of 478.102(a)?

12      A.   Yes, that's correct.

13      Q.   So I'd note then that would be a single

14  violation.

15      A.   Well, it depends on how you look at it.  Two

16  blocks are technically blank.

17      Q.   Okay.

18      A.   In this case, it's 102(a), which is different

19  than not filling out a form.  This is actually a sale

20  that shouldn't have taken place.

21      Q.   I see.

22      A.   So it is one instance with these two blocks

23  that would be put together.

24      Q.   I understand.  That's all the questions I

25  have for you, Ms. Valls.

1      A.   All righty.

2           HEARING OFFICER FRONCZAK:  Mr. Frazier, do

3      you have any questions of Ms. Valls?

4           MR. FRAZIER:  A couple.

5                      **CROSS-EXAMINATION**

6           BY MR. FRAZIER:

7      Q.   Referring back to the gun that was supposed

8      to be a machine gun, do you know when Bill called in?

9      Did you know?  Did he call in, do you know if it was

10     the same day he got the gun in or a month later?

11     A.   I don't know.

12     Q.   Did anybody tell him not to sell the gun?

13     A.   Not that I'm aware of.

14          MR. FRAZIER:  Okay.  That's all my questions.

15                   **REDIRECT EXAMINATION**

16          BY MR. BOYER:

17     Q.   And just for clarification, again for the

18     record, I would note that that particular transaction

19     turns up what Hoffman related to Ms. Valls and was

20     later passed onto Special Agent Martin, is not a

21     violation that is noted nor included in the notice to

22     deny the new application.

23     A.   That's correct.

24          (Witness excused.)

25          HEARING OFFICER FRONCZAK:  Thank you.  At

```
 1   this time, we're ready to proceed with your

 2   presentation of anything you may have.

 3              MR. VANN:  Actually, before we start --

 4              HEARING OFFICER FRONCZAK:  Do we need a

 5   break?

 6              MR. VANN:  -- let's take a break.  It's

 7   12:56.  I need 20 minutes from 1 to 1:20 at most for a

 8   conference call that I just can't get out of.  Can we

 9   reconvene at 1:20?

10              HEARING OFFICER FRONCZAK:  Is that okay with

11   everybody else?

12              MR. VANN:  1:20.  That gives him 20 minutes

13   to look through this stuff anyway because I feel that's

14   appropriate at this moment.

15              HEARING OFFICER FRONCZAK:  Absolutely.

16              MR. VANN:  So you can look through it because

17   there's quite a volume of material.

18              HEARING OFFICER FRONCZAK:  Okay.  So at

19   12:26, we will be off the record, and we'll resume in

20   20 minutes.  Okay.  Thank you.

21              (Off the record at 12:56 p.m.)

22              (On the record at 1:17 p.m.)

23              HEARING OFFICER FRONCZAK:  Okay.  It is 1:17,

24   and we are back on record.

25              Mr. Frazier, it's your turn to present
```

124

1  evidence and anything -- any discussion you want to

2  have regarding why your federal license renewal should

3  not be denied.

4        MR. FRAZIER:  The first thing I want to say

5  is that obviously it appears that probably 99 percent

6  of the paperwork is under William Hoffman.  You know, I

7  guess I just relied on him, being him working at other

8  gun shops in the past, and he told me he knew what he

9  was doing and he knew all about the paperwork and what

10  needed to be done.  Obviously, that wasn't factual.

11        I also brought with me stuff that I have been

12  doing to make sure all the paperwork is right and would

13  get stuff in.  I'll give you my Exhibit 1, and it's six

14  pages.

15        You get a copy of that, correct?

16  **(Applicant's Exhibit 1 marked for identification.)**

17        MR. BOYER:  And just to be clear,

18  Mr. Frazier, so would this be actions that you've taken

19  since --

20        MR. FRAZIER:  Since Bill's been gone.  Since

21  he's not working there.

22        MR. BOYER:  Since Bill's been gone.  Okay.

23  So I understand and appreciate you taking the effort.

24        I would object to the admission of these

25  exhibits simply because this hearing is simply based on

125

1   the violations and during that I guess that led up to

2   recovery of the documents and the violations that were

3   noted therein.  And so in case law, unfortunately, you

4   know, rules against the licensee in terms of remedial

5   action or corrective actions that have been taken

6   since, it's not a matter for consideration for purposes

7   of these hearings.

8           HEARING OFFICER FRONCZAK:  I'll take that

9   into consideration, but I am going to allow it to be

10  entered into the record as Exhibit 1 for the FFL.

11  **(Applicant's Exhibit 1 received in evidence.)**

12          MR. FRAZIER:  Thank you.  Anybody else gets a

13  copy?

14          MR. BOYER:  Yeah, yeah, make sure.  He's the

15  most important one.

16          HEARING OFFICER FRONCZAK:  I just want to be

17  clear, too, for Exhibit 1, this is showing what

18  exactly?

19          MR. FRAZIER:  It's a six page -- what it is,

20  the first page is a contract that when we put a gun in,

21  it goes into our computer system.  This is a copy of

22  the contract.  And then there's checkmarks beside each

23  firearm.  That is me personally noting that I logged

24  those into the book.

25          The second page is a page from our computer,

126

1  but I did not know that it would print out all the guns

2  in and out, and if you look at, it's got checkmarks by

3  each side.  On the first column, this is just backing

4  up the contract, that each gun gets logged in, in the

5  book and with a name, which is in response to this that

6  we print out that we can make sure all these are

7  loaded in.

8         And then the next four pages is an actual

9  4473.  Then there's two checkmarks at the top, that's

10  one, me, that I've logged it out and the second

11  checkmark is that I've went over everything, making

12  sure everything's in, and also the very last page, we

13  copy a driver's license to keep with all the paperwork

14  now also, and if they have a concealed carry form, we

15  copy that also.

16         And the second exhibit, Number 2, is just

17  our -- everything that we've -- I printed this out back

18  in March of this year, when I knew the hearing was

19  coming up, just kind of showing the percentage of

20  business we do.  If you look on page 9, and this is

21  just showing how much percentage of guns that we do,

22  why it's kind of pertinent that I keep my license.  If

23  you look at it, just on page 9, if you add it up, the

24  principal involved, all four percentage, is 38.44

25  percent of our business just in buys of firearms, and

1    then the pawns is actually 28 -- it looks like 21.57

2    percent in pawns.

3    **(Applicant's Exhibit 2 marked for identification.)**

4              MR. BOYER:  And the pawns, I'm sorry.  The

5    pawns are firearms only or --

6              MR. FRAZIER:  Yes, just firearms.

7              MR. BOYER:  Okay.

8              HEARING OFFICER FRONCZAK:  So basically what

9    you're saying then is that 59 percent of your total

10   business conducted is a combination of firearm sales

11   and pawned firearms?

12             MR. FRAZIER:  I do not know if that

13   percentage totals, but pawns and that is 59 percent.  I

14   would say of all our stuff that we buy in -- this was

15   from January through December of 2018, this log, of all

16   the things that we bought throughout that year, 38.44

17   percent was purchase of handguns or purchase of

18   firearms, and then of the pawns, it's 21.57 percent of

19   the pawns.  So I would think that it was separated

20   between buys and pawns, not a total together.

21             HEARING OFFICER FRONCZAK:  I accept

22   Licensee's Exhibit 1 into the record.

23   **(Applicant's Exhibit 2 received in evidence.)**

24             HEARING OFFICER FRONCZAK:  But I'm also going

25   to let Government counsel look at it.

128

1          MR. FRAZIER:  You can have my copy if you

2    want.

3          MR. BOYER:  I make the same objection to

4    Applicant's or Licensee's Exhibit Number 2 on the same

5    basis, just the fact that we're -- it goes outside the

6    scope of the hearing, the reason why we're here today,

7    your evidence.  What I may do is just burn a quick

8    copy, you know, when we're done.

9          MR. FRAZIER:  You can have mine.

10          MR. BOYER:  Yeah.

11          MR. FRAZIER:  I don't need it.

12          MR. BOYER:  Okay.  Yeah.  All right.

13          MR. FRAZIER:  I don't need it.

14          MR. BOYER:  I'll do that.

15          MR. FRAZIER:  And that's all I brought.

16          HEARING OFFICER FRONCZAK:  Do you have

17    anything else you'd like to say --

18          MR. FRAZIER:  Just that --

19          HEARING OFFICER FRONCZAK:  -- or state?

20          MR. FRAZIER:  Just the same thing that I've

21    iterated before, that as I stated, just going through,

22    skimming through 99 percent of this, the violations

23    were William Hoffman's responsibility.  And as far as

24    the transactions he did, selling -- making straw

25    purchases, whatever he has done, is solely on him.  I

129

1  had nothing to do with it.  If he said that I did, he's

2  a liar.  I never knew he was selling guns.  He didn't

3  come to me and say, hey, should we sell this or not

4  because I told him before, like I told any other guys

5  that work for me, if you think it's an issue, just tell

6  me, no, you're not licensed to sell it to them.  And

7  I've always told everybody that.  That's all I have.

8           MR. VANN:  We have a few questions then for

9  Mr. Frazier.

10  (Whereupon,

11                    **DAVID M. FRAZIER II**

12  was called as a witness by and on behalf of the

13  Government and was examined and testified as follows:)

14                    **DIRECT EXAMINATION**

15           BY MR. VANN:

16      Q.   Mr. Frazier, I just want to get a few things

17  straight.  Number one, you do understand your

18  obligations as a firearms dealer, correct?

19      A.   As far as --

20      Q.   Your obligations, what you're required to do,

21  writing the 4733s, keeping A&D book --

22      A.   Yes, sir.

23      Q.   -- those types of things?  You understand

24  that's issues?

25      A.   Um-hum.

130

1       Q.   You've been briefed on those --

2       A.   Yes, sir.

3       Q.   -- and you acknowledge those; is that

4    correct?

5       A.   Yes, sir.

6       Q.   So you know what your duties are and what

7    your responsibilities are as a licensee to sell guns?

8       A.   Yes, and like I said, when I hired Bill, I

9    thought that he was going to handle all that.

10      Q.   But you still understand as well, right?   I

11   mean you're continuing to do it now.

12      A.   Yes.

13      Q.   And you've taken steps to ensure that there's

14   going to be compliance with those?

15      A.   Yes, sir.

16      Q.   And you know what to comply with?

17      A.   Yes.

18      Q.   Do you have access to resources that would

19   help you with that as well?  Do you have a White Book?

20      A.   A White Book?

21      Q.   Uh-huh.

22      A.   No, I never heard of a White Book.

23      Q.   The Federal Firearms Manual that they give

24   you.

25      A.   Oh, I'm sorry.  I mean they gave it to me

131

1  when I first got my license.

2       Q.   So you got it?

3       A.   Yes.

4       Q.   And you've also had some dealings with IOIs,

5  correct?  With the investigators?

6       A.   Eileen, yes.

7       Q.   With Eileen?

8       A.   Um-hum.

9       Q.   And you've got her phone number.  You can

10  call her if you've got a question.

11      A.   Yes, and I have before, yes.

12      Q.   And you have called her?

13      A.   Um-hum.

14      Q.   Okay.  So if you had a question about what to

15  do properly, you would call her?

16      A.   Yes.

17      Q.   Okay.  And you do also understand that you

18  have responsibility for your employees?

19      A.   Yes.

20           MR. VANN:  Okay.  No further questions.

21           (Witness excused.)

22           HEARING OFFICER FRONCZAK:  Nothing else?  Do

23  you have anything else?

24           MR. FRAZIER:  No, sir.

25           HEARING OFFICER FRONCZAK:  Okay.  So I want

132

1    to thank everyone.  I believe we have all the

2    information that I need.  I will make my final decision

3    based on the information provided at the hearing today

4    and the record that was presented before me.

5          If the decision is that the Licensee's

6    application will not be denied, you will receive a

7    written notice of that decision.  In the event that

8    it's determined that the Licensee's application will be

9    denied, you will receive a final notice of denial of

10   application.  You will also receive a copy of my

11   findings and conclusions.  If you receive a final

12   notice, you may file a request in federal District

13   Court in the district where you conduct business under

14   the provisions of Section 923(f)(3), Title 18, United

15   States Code, for a de novo hearing.  This request must

16   be submitted within 60 days of the receipt of the final

17   notice.

18         At this time, as I just mentioned before, is

19   there anything else anyone would like to add to the

20   record?

21         MR. BOYER:  None from the Government.

22         MR. FRAZIER:  None from me.

23         HEARING OFFICER FRONCZAK:  Okay.  If there is

24   nothing further to add, the time is 1:27 p.m.  This

25   hearing is officially closed.

133

1          (Whereupon, at 1:27 p.m., the hearing in the

2     above-entitled matter was closed.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

134

1                              __CERTIFICATE__

2     This certifies that the attached proceeding before the

3       BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES

4     IN THE MATTER OF:        DAVID FRAZIER II dba

5                              FRAZIER'S PAWN SHOP

6     PLACE:                   Martinsburg, WV

7     DATE:                    August 21, 2019

8

9     was held according to the record, and that this is the

10    original, complete, true and accurate transcript which

11    has been compared to the recording accomplished at the

12    hearing.

13

14

15

16

17          _____

18                              Bradley Weirich

19                              Court Reporter

20

21

22

23

24

25

Free State Reporting, Inc.
1378 Cape St. Claire Road
Annapolis, MD 21409
(410) 974-0947