**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License

In the matter of:

[✓] The application for license as a/an  Pawnbroker in Firearms Other than Destructive Devices _____ , filed by:
or

[ ] License Number _____ as a/an
_____ , issued to:

Name and Address of Applicant or Licensee *(Show number, street, city, state and ZIP Code)*

Mr. David Frazier II
Frazier's Pawn Shop
922 N. Queen Street
Martinsburg, West Virginia 25404

Federal Firearms License Number:  4-55-003-02-8H-01768

**Notice is Hereby Given That:**

[ ] A request for hearing pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5) was not timely filed.  Based on the findings set forth in the attached document, your

    [ ] license described above is revoked pursuant to 18 U.S.C. 923(e), 922(t)(5) or 924(p), effective:

        [ ] 15 calendar days after receipt of this notice, or [ ] _____ ,

    [ ] license is suspended for _____ calendar days, effective _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

    [ ] licensee is fined $_____ , payment due: _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

[✓] After due consideration following a hearing held pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5), and on the basis of findings set out in the attached copy of the findings and conclusions, the Director or his/her designee concludes that your

    [ ] application for license described above is denied, pursuant to 18 U.S.C. 923(d).

    [✓] application for renewal of license described above is denied pursuant to 18 U.S.C. 923(d), effective:

        [✓] 15 calendar days after receipt of this notice, or [ ] _____ ,

    [ ] license described above is revoked pursuant to 18 U.S.C. 923(e), 922(t)(5) or 924(p), effective:

        [ ] 15 calendar days after receipt of this notice, or [ ] _____ ,

    [ ] license is suspended for _____ calendar days, effective _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

    [ ] licensee is fined $_____ , payment due: _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

If, after the hearing and receipt of these findings, you are dissatisfied with this action you may, within 60 days after receipt of this notice, file a petition pursuant 18 U.S.C. § 923(f)(3), for judicial review with the U.S. District Court for the district in which you reside or have your principal place of business.  If you intend to continue operations after the effective date of this action while you pursue filing for judicial review or otherwise , you must request a stay of the action from the Director of Industry Operations (DIO), Bureau of Alcohol, Tobacco, Firearms and Explosives, at  90 K St NE, Suite 1102, Washington DC 20226 , prior to the effective date of the action set forth above.  You may not continue licensed operations unless and until a stay is granted by the DIO.

Records prescribed under 27 CFR Part 478 for the license described above shall either be delivered to ATF within 30 days of the date the business is required to be discontinued or shall be documented to reflect delivery to a successor.  See 18 U.S.C. 923(g)(4) and 27 CFR § 478.127.

After the effective date of a license denial of renewal, revocation, or suspension, you may not lawfully engage in the business of dealing in firearms.  Any disposition of your firearms business inventory must comply with all applicable laws and regulations.  Your local ATF office is able to assist you in understanding and implementing the options available to lawfully dispose of your firearms business inventory.

| Date | Name and Title of Bureau of Alcohol, Tobacco, Firearms and Explosives Official | Signature |
|---|---|---|
| 10-8-19 | Michael F. Fronczak - Director, Industry Operations | |

I certify that, on the date below, I served the above notice on the person identified below by:

☐ Certified mail to the address shown below.
   Tracking Number: _____     **Or**

☑ Delivering a copy of the notice to
   the address shown below.

| Date Notice Served | Title of Person Serving Notice | Signature of Person Serving Notice |
|---|---|---|
| 10\|10\|2019 | Special Agent Keith Martin | |
| **Print Name and Title of Person Served** | | **Signature of Person Served** |
| David Frazier | | |

Address Where Notice Served

922 North Queen Street, Martinsburg, WV 25404

Note: Previous Edition is Obsolete

Page 1 - Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| In the Matter of the Final Notice | : | Case No. WAS-19-245316 |
| of Denial of Federal Firearms | : | |
| License | : | |
| | : | |
| David Frazier II | : | FINDINGS AND CONCLUSIONS |
| Frazier's Pawn Shop | : | |
| FFL No. 4-55-003-02-8H-01768 | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## Introduction

On January 29, 2019, ATF issued a Notice to Deny (renewal) Application for License ("the Notice"), ATF Form 4498, to Mr. David Frazier II ("the Licensee"). The Licensee requested a hearing to review the Notice by email to the Director of Industry Operations dated February 14, 2019.

A hearing was held on August 21, 2019 at 40 Compass Pointe, Martinsburg, West Virginia 25404. The hearing was conducted by Michael F. Fronczak, Director of Industry Operations, Washington Field Division. ATF was represented by Associate Chief Counsel, Firearms and Explosives Law Division, James Vann and ATF Division Counsel, Washington Field Division, Michael Boyer. ATF Special Agent (SA) Keith Martin and ATF Industry Operations Investigator (IOI) Eileen Valls appeared as witnesses on behalf of the Government. ATF Area Supervisor, Falls Church III Field Office, Cynthia Chuy, was present for observational purposes only. The Licensee appeared without counsel. The hearing was recorded by Free State Reporting, Inc., and both the Government and the Licensee offered testimony and exhibits. The testimony and exhibits introduced at the hearing constitute the record in this proceeding. Both parties had the opportunity to present, and in fact presented, factual and legal arguments, testimony, and evidence, and examined and cross examined witnesses.

Under the provisions of section 923(e), Title 18, United States Code, and 27 C.F.R. § 478.73, a Federal Firearms license may be revoked if the holder of such license has willfully violated any provision of Chapter 44, Title 18, United States Code, or any rule or regulation issued thereunder.

Based on the evidence submitted at the hearing, I find that the Licensee has willfully violated the Gun Control Act and its implementing regulations, and the license held by the Licensee, which were subject to renewal, said renewal is denied and the license is revoked.

Page 2 - Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License

## Findings of Fact

Having presided at the hearing and reviewed the record in this proceeding, I make the following findings:

1. During the summer of 2017, ATF Special Agent (SA) Keith Martin opened an investigation into, Mr. David Frazier II ("the Licensee"), and his employees at Frazier's Pawn Shop regarding the potential illegal sale of firearms. As part of that investigation, SA Martin utilized an ATF Confidential Informant (CI), who is a convicted felon, to conduct a series of controlled monitoring visits to Frazier's Pawn Shop. These controlled monitoring visits involved sending the CI and Undercover ATF Special Agents (UCs) into Frazier's Pawn Shop to attempt to purchase firearms either "off the books" or through straw purchases.

2. The first controlled monitoring visit occurred on August 25, 2017. On this date, SA Martin sent the CI into Frazier's Pawn Shop to solicit conversation about an interest in purchasing a firearm without the completion of an ATF Form 4473 and FBI National Instant Criminal Background Check System (NICS) background check. Prior to the visit, a transmitter was placed on the CI, which allowed for audio recording of the CI's visit to Frazier's Pawn Shop. During this visit, the CI spoke with Mr. Hoffman and made him aware of his prior felony conviction from forty years ago in Fairfax, VA. The CI also asked Mr. Hoffman whether his cousin could come and complete the paperwork necessary to purchase a firearm for the CI. In response, Mr. Hoffman demonstrated his knowledge of the Gun Control Act (GCA) by accurately informing the CI that this is what is called a "straw purchase," which carries a possible penalty of up to ten years if convicted. Mr. Hoffman also advised the CI to go to the West Virginia State Police and have them conduct a criminal background check to confirm whether the CI was prohibited from purchasing a firearm.

3. A second controlled monitoring visit occurred on September 12, 2017. On this date, SA Martin sent the CI into Frazier's Pawn Shop to attempt to purchase a firearm. As was done previously, a transmitter was placed on the CI, which allowed for an audio recording of the CI's visit to Frazier's Pawn Shop. During this visit, the CI informed Mr. Hoffman that he had checked on his prior conviction and confirmed that he was a felon. In response, Mr. Hoffman, once again, demonstrated his knowledge of the GCA by explaining that if the CI had someone else buy a firearm for him and got caught, the CI faced the possibility of ten years in prison. The CI said that he was not worried about that and still wanted to buy a firearm. After suggesting that the CI could potentially purchase a firearm at a flea market, Mr. Hoffman told the CI that if he came across a firearm with "no contracts," he could sell the CI the firearm without having to get someone to buy it for him.

4. On September 28, 2017, SA Martin received a phone call from the CI who informed him that on September 23, 2017 the CI and a female acquaintance went to Frazier's Pawn Shop and spoke with Mr. Hoffman. The CI relayed to SA Martin that Mr.

Page 3 - Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License

Hoffman had informed him that he had not yet come across any firearms that he could sell to the CI, but then pointed to the CI's female acquaintance and stated that he could sell a firearm to her to give to the CI. The CI responded that he would get back to him and departed the store.

5. On October 18, 2017, SA Martin sent the CI and an ATF Undercover Special Agent (UC1) into Frazier's Pawn Shop. A transmitter was placed on the CI, which allowed for an audio recording of the visit. During this visit, the CI made it clear to Mr. Hoffman that he had brought UC1 into the store to purchase a firearm for him. Mr. Hoffman asked where UC1 was from and she stated Arlington, VA. Mr. Hoffman responded, once again demonstrated his knowledge of gun laws and gun control measures, by describing how the laws differ slightly in Virginia, Maryland and New York, and by accurately informing the CI of the restrictions on the sale of handguns to out-of-state residents. After Mr. Hoffman showed the CI a number of rifles at varying prices, Mr. Hoffman agreed to sell the CI a black Hi-Point rifle, model 4595, .45 caliber rifle with serial number R55185. While the CI paid for the rifle at the cash register, Mr. Hoffman had UC1 complete the ATF Form 4473 to complete the transaction. Mr. Hoffman also conducted an FBI NICS background check of UC1 for the firearm purchase. Mr. Hoffman falsely recorded that UC1 was the purchaser of the firearms on the ATF Form 4473 and in his acquisition and disposition records. Mr. Hoffman also failed to run the National Criminal Instant Background Check (NICS) background check on the actual purchaser of the firearm.

6. On October 24, 2017, SA Martin once again sent the CI and another ATF Undercover Special Agent (UC2) into Frazier's Pawn Shop. A transmitter was placed on the CI, which allowed for an audio and video recording of the visit. During this visit, the CI spoke with Mr. Hoffman about the rifle he previously purchased in Frazier's Pawn Shop on October 18, 2017, and expressed an interest in purchasing a pistol. The CI reiterated to Mr. Hoffman that he is a convicted felon, a fact which Mr. Hoffman acknowledged by making a shushing gesture. Mr. Hoffman and the CI went through a number of firearms before the CI agreed to purchase a Springfield pistol, model XD9, 9mm with serial number GM979645, two magazines and a box of Federal 9mm caliber ammunition. Mr. Hoffman knew that the CI was the actual purchaser of the firearm and not UC2. Nevertheless, while the CI paid for the firearm at the cash register, Mr. Hoffman had UC2 complete the ATF Form 4473 and ran an FBI NICS background check on UC2 to complete the firearm transaction. Mr. Hoffman falsely recorded that UC2 was the purchaser of the firearms on the ATF Form 4473 and in his acquisition and disposition records. Mr. Hoffman also failed to run the NICS background check on the actual purchaser of the firearm. The Licensee also, despite being told by Mr. Hoffman that the CI was prohibited and that the UC2 was purchasing the firearm for the CI, approved the sale and allowed it to proceed.

7. On January 18, 2018, SA Martin sent two other ATF Special Agents, SA Nasir Sessoms and SA Sabrina Hager, in an undercover capacity into Frazier's Pawn Shop to attempt a straw purchase. Both agents were given a transmitter recording device, but only one of the transmitters was recording at the time of the visit. The one

Page 4 - Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License

transmitter that recorded the visit provided an audio and video recording. During this visit, the two UC agents spoke with Mr. Hoffman and it was made clear that SA Hager wished to purchase multiple handguns for SA Sessoms, who represented himself to be an out-of-state resident. Mr. Hoffman recognized this to be a straw purchase at the time and even apprised both agents of the fact. Nevertheless, Mr. Hoffman facilitated the transaction by allowing SA Hager to fill out the ATF Form 4473, while SA Sessoms paid for the two firearms at the cash register. Mr. Hoffman falsely recorded that SA Hager was the purchaser of the firearms on the ATF Form 4473 and in his acquisition and disposition records. Mr. Hoffman also failed to run the NICS background check on the actual purchaser of the firearm.

8. During the visit on January 18, 2018 described above, the Licensee was in close enough proximity to where the straw purchase transaction between Mr. Hoffman and the two UC agents was occurring that the Licensee would have been able to hear what was taking place. Additionally, Mr. Kevin Kidrick, who was an employee of Frazier's Pawn Shop and was manning the cash register during this visit, later admitted to law enforcement that he had identified this transaction as a straw purchase, but took no action to stop the transaction from going forward.

9. Following these controlled monitoring visits to Frazier's Pawn Shop, SA Martin obtained a federal search warrant through the U.S. Magistrate Court in Martinsburg, WV. On January 24, 2018, SA Martin, along with other ATF agents and investigators, executed the federal search warrant of Frazier's Pawn Shop, during which time numerous items in support of the criminal investigation into the Licensee and his employees were seized from the premises, to include multiple firearms, ammunition, computers, cellular phones, and the Licensee's Federal firearms licensee records and documents.

10. A subsequent inspection of the Licensee's Federal firearms licensee records and documents revealed multiple violations of the GCA, including two additional straw purchases facilitated by Mr. Hoffman. The two additional straw purchases were recorded on two separate ATF Form 4473 – one dated April 21, 2017 for transaction number 5446 and one dated July 29, 2017 for transaction number 5632. Both transactions were flagged by ATF investigators because, although both forms indicated that Mr. Hoffman was the "actual purchaser," the handwritten receipts indicated that the firearms went to other individuals. When confronted by SA Martin about his involvement in transaction number 5446, which involved the sale of a Remington Model 870, 20-gauge shotgun with serial number C925158, Mr. Hoffman admitted that, even though Ms. Michele Crews had paid for the firearm, he falsely indicated he was the "actual purchaser" on the ATF Form 4473 and ran the FBI NICS background check on himself to complete the transaction. Likewise for transaction number 5632, which involved the sale of a Glock pistol, Model 19, 9mm with serial number AMCS728, Mr. Hoffman admitted that he falsely listed himself as the "actual purchaser" on the ATF Form 4473 and ran the FBI NICS background check on himself in order to complete the transaction and prior to transferring the firearm to Ms. Audrea Crews. Mr. Hoffman explained that he did so because Ms. Audrea Crews was 18 years old at the time of the transaction and thus precluded

Page 5 - Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms
License

under the GCA from purchasing a handgun firearm. Mr. Hoffman also informed SA
Martin that he informed the Licensee of both of these transactions, including to
whom the firearms would eventually be given, and that the Licensee approved both
transactions.

11. In addition to the transactions described above, further violations of the GCA were
discovered upon inspection of the Licensee's Federal firearms licensee records and
documents. As such, the Licensee was cited for the following violations:

a. On April 21, 2017, licensee's representative falsely completed an ATF Form
4473, entered incorrect information into their acquisition and disposition record
and improperly ran a NICS background check on himself for the purchase of a
Remington shotgun (Model 870; 20 gauge; S/N C925158), which he actually sold
and transferred to Michele CREWS in violation of 18 U.S.C. §§ 923(g)(1)(A),
922(t)(1), and 924(a)(1)(A), and 27 C.F.R. §§ 478.102(a), 478.124(c)(1),
478.125(e) and 478.128(a).

b. On July 29, 2017, licensee's representative falsely completed an ATF Form 4473,
entered incorrect information into their acquisition and disposition record and
improperly ran a NICS background check on himself for the purchase of a Glock
pistol (Model 19; 9mm caliber; S/N AMCS728), which he actually sold and
transferred to Audra CREWS, who was eighteen years of age at the time of the
handgun purchase, in violation of 18 U.S.C. §§ 923(g)(1)(A), 922(t)(1),
924(a)(1)(A), and 922(x), and 27 C.F.R. §§ 478.102(a), 478.124(c)(1), 478.125(e)
and 478.128(a).

c. On October 18, 2017, licensee's representative falsely completed an ATF Form 4473,
entered incorrect information into their acquisition and disposition record and
improperly ran a NICS background check on a person other than the actual purchaser
and facilitated the straw purchase of a Hi-Point rifle (Model 4595; .45 caliber; S/N
R55185) to an individual with a Virginia driver's license, portrayed by an ATF
Undercover (UC) agent, for the actual purchaser, portrayed by an ATF confidential
informant (CI) with a felony conviction, who the licensee's representative knew or
reasonable should have known was a prohibited person in violation of 18 U.S.C. §§
922(d)(1), 923(g)(1)(A), 922(t)(1), and 924(a)(1)(A), and 27 C.F.R. §§ 478.102(a),
478.124(c)(1), 478.125(e) and 478.128(a).

d. On October 24, 2017, licensee's representative falsely completed an ATF Form 4473,
entered incorrect information into their acquisition and disposition record and
improperly ran NICS background check on a person other than the actual purchaser
and facilitated the straw purchase of a Springfield pistol (Model XD-9; 9mm caliber,
S/N GM979645) to an individual with a West Virginia driver's license, portrayed by
an ATF UC agent, for the actual purchaser, portrayed by an ATF CI with a felony
conviction, who the licensee's representative knew or reasonable should have known
was a prohibited person in violation of 18 U.S.C. §§ 922(d)(1), 923 (g)(1)(A),
922(t)(1), and 924(a)(1)(A), and 27 C.F.R. §§ 478.102(a), 478.124(c)(1), 478.125 (e)

Page 6 - Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License

and 478.128(a).

e.  On January 18, 2018, licensee's representative falsely completed an ATF Form 4473, entered incorrect information into their acquisition and disposition record and improperly ran NICS background check on a person other than the actual purchaser and facilitated the straw purchase of a Springfield pistol (Model XD-45; .45 ACP caliber, S/N GM403521) and an FN pistol (Model FNS-9; 9mm caliber; S/N GKU0026569) to an individual with a West Virginia driver's license, portrayed by an ATF UC agent, for the actual purchaser, portrayed by another ATF UC agent, who the licensee's representative knew or reasonable should have known was an out-of-state resident in violation of 18 U.S.C. §§ 922(b)(3), 923(g)(1)(A), 922(t)(1) and 924(a)(1)(A), and 27 C.F.R. §§ 478.102(a), 478.124(c)(1), 478.125(e) and 478.128(a).

f.  Licensee engaged in approximately forty-seven (47) willful violations (on twenty-nine (29) ATF Form 4473) of 18 U.S.C. §§ 922(m), 923(g)(1)(A), and 27 C.F.R. §§ 478.21(a) and 478.124(c)  for transferring a firearm without first completing accurately all appropriate sections (such as questions 11.a, 16, 22, 23 and 29) of ATF Form 4473.

g.  Licensee engaged in approximately sixty-six (66)  violations (on forty (40) ATF Form 4473) of 18 U.S.C. §§ 922(m), 923(g)(1)(A), and 27 C.F.R. § 478.124(c)(1), for transferring a firearm without first requiring the transferee provide the personal identifying information (such as name, residential address, place of birth, citizenship, etc.) required by ATF Form 4473.

h.  Licensee engaged in approximately five (5) violations (on five (5) ATF Form 4473) of 18 U.S.C. §§ 922(m), 922(t)(1)(c), and 923(g)(1)(A), and 27 C.F.R. § 478.124(c)(3)(i) for failing to verify and properly record the identity of the transferee by examining a valid government-issued identification document (as defined in 27 C.F.R. § 478.11).

i.  Licensee engaged in approximately thirty-six (36) violations of 18 U.S.C. §§ 922(m), 922(t), and 923(g)(1)(A), and 27 C.F.R. § 478.124(c)(3)(iv) for failing to record all NICS transaction information on ATF Form 4473 (questions 19.a, 19.c, and 19.d) prior to the transfer of a firearm.

j.  Licensee violated 18 U.S.C. §§ 922(m) and 923(g)(1)(A), and 27 C.F.R. § 478.124(c)(4) for failing to enter correct information regarding the manufacturer, serial number, and caliber/gauge of the firearm to be transferred on ATF Form 4473 (question 27) prior to the transfer of the firearm.

k.  Licensee engaged in approximately five (5)  violations (on five (5) ATF Form 4473) of 18 U.S.C. §§ 922(m), 923(g)(1)(A), and 27 C.F.R. § 478.124(c)(5), for failing to properly sign and/or record the correct date of transfer of a firearm on ATF Form 4473.

Page 7 - Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License

l.  Licensee engaged in approximately two (2) violations of 18 U.S.C. § 922(g)(3) and 27 C.F.R. § 478.126a, involving four (4) handguns, for failing to timely or correctly report the sale of two or more pistols, or revolvers, or combination thereof, to an unlicensed person on the same day or within five consecutive business days.

m.  Licensee engaged in approximately eight (8) violations of 18 U.S.C. § 922(m) and 923(g)(1)(A), and 27 C.F.R. § 478.125(e) for failing to completely, accurately, and timely record information (such as the fact of disposition, the date of disposition, the transferees name and address) into the Acquisition and Disposition record.

n.  Licensee violated 18 U.S.C. § 922(t)(1)(A) and 27 C.F.R. § 478.102(a)(1) for failing to conduct a NICS background check on a purchaser of a firearm.

12. Prior to the events described above, the Licensee's business underwent multiple inspections, including a qualifications inspection and several compliance inspections, by ATF.  As is customary practice, during each of these inspections, the Licensee and/or his employee signed an acknowledgement form indicating that an ATF investigator had provided them with a general overview of the Federal firearms regulations, including a discussion on "straw purchases," and explained to them their responsibilities as a Federal firearms licensee and answered any questions they may have. Following the compliance inspections conducted of licensee in 2010, 2011 and 2014, licensee was cited for multiple violations of the GCA and issued warning letters, each of which informed licensee of the importance of properly maintaining business records and warned licensee that any future violations may be viewed as willful and may result in revocation of his license.  In addition to the issuance of a warning letter, following the 2011 inspection, which covered the period of December 13, 2010 to December 12, 2011, licensee attended a warning conference on July 10, 2012 at the ATF Martinsburg Field Office. At this warning conference, the GCA violations discovered during the inspection were discussed in detail and the importance of complying with the Gun Control Act was explained to the Licensee. The Licensee was given an opportunity to ask any questions about Federal firearms regulations.  The following day, July 11, 2012, ATF sent the Licensee a letter summarizing the discussions that had taken place at the warning conference, and reminded the Licensee that future violations may be considered willful and may result in revocation of his license.

13. At the hearing, the Licensee did not dispute his compliance history, nor did the Licensee dispute any of the violations noted within the Notice or that he knew and understood his obligations to comply with the Gun Control Act.  The Licensee also did not dispute that the violations were done willfully.  Rather, the Licensee opted to provide documents that suggested he has taken remedial measures since the execution of the search warrant by ATF at Frazier's Pawn Shop to ensure he was complying with the GCA – such as, including all firearms in his acquisition and disposition book and ensuring all ATF Form 4473's are properly filled out and accurate.   In addition, the Licensee provided documentation showing what

Page 8 - Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License

percentage of his business is comprised of firearms sales and why losing his Federal firearms license would be detrimental to his business. Finally, the Licensee suggested that the violations should be attributed to Mr. Hoffman and not himself because "probably 99 percent of the paperwork is under William Hoffman." However, the Licensee admitted that he knows of his duties, obligations and responsibilities as a Federal firearms licensee and acknowledged that he has responsibility for the actions of his employees, including Mr. Hoffman.

## Conclusions of Law

1.  Pursuant to the GCA, ATF may, after notice and opportunity for hearing, revoke a Federal firearms license if the licensee has willfully violated any provision of the GCA or the regulations issued thereunder. 18 U.S.C. § 923(e); 27 C.F.R. § 478.73.

2.  For purposes of the regulatory provisions of the GCA, a purposeful disregard of or plain indifference to the laws and regulations imposed on firearms dealers shows willfulness for purposes of § 923(d)(l)(C). Repeated violations after being informed of regulatory obligations constitute plain indifference or deliberate disregard of the GCA. *See RSM v. Herbert*, 446 F. 3d 316, 322 (4th Cir. 2006); *American Arms. Int. v. Herbert*, 563 F. 3d 78, 87 (4th Cir. 2009).

3.  The Licensee is liable for the acts of its employees. *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 468 (7th Cir. 1980). Violations committed by employees selling firearms while working within the scope of their employment with the Licensee are attributable to the Licensee. *See Bankston v. Then*, 615 F.3d 1364, 1368-1369 (11th Cir. 2010).

4.  Having established that the Licensee violated the GCA and the regulations issued thereunder, it must be determined whether such violations were willfully committed. For the reasons stated below, I conclude that the Licensee's conduct was willful in relation to all of the stated violations in the Findings of Fact.

5.  The evidence and testimony presented at the hearing clearly shows that the Licensee understood his duties and responsibilities as a Federal firearms licensee, to include but not limited to preventing straw purchases. The Licensee acknowledged on at least 3 separate occasions that an ATF investigator had explained this illegal practice and answered his questions regarding such. These acknowledgements notwithstanding, the evidence suggests that the Licensee may have not only been aware of but also approved at least one, if not two, straw purchases facilitated by his employee, Mr. Hoffman, on October 24, 2017 and January 18, 2018, respectfully. The evidence also suggests that the Licensee was aware of and approved the two additional straw purchases Mr. Hoffman directly engaged in for Ms. Michelle Crews and Ms. Audra Crews. Importantly, however, even in the absence of such evidence of the Licensee's complicity in these straw purchases, the Licensee clearly acknowledged at the hearing that he is responsible for the actions of his employees,

Page 9 - Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License

including Mr. Hoffman. This is significant because Mr. Hoffman also acknowledged an understanding of straw purchases. If there was any doubt as to whether Mr. Hoffman fully understood what is precluded under the law, Mr. Hoffman dispelled all such doubt when he accurately explained to the CI on August 25, 2017, as well as to the two ATF undercover agents on January 18, 2018, not only what qualifies as a straw purchase, but also what one can expect to receive as a punishment under the law should one be caught participating in such practice. Nevertheless, Mr. Hoffman willfully facilitated the straw purchase of multiple firearms on 5 separate occasions. On October 18, 2018 and October 25, 2018, despite knowing that the CI was a convicted felon, Mr. Hoffman allowed for two ATF undercover agents to mark on the ATF Form 4473 they were the actual purchasers of the firearms, when in fact they were not and Mr. Hoffman knew they were not. Likewise, on January 18, 2018, Mr. Hoffman knew that SA Sessoms, who posed as an out-of-state resident, could not purchase a handgun in West Virginia and that SA Hager was not the actual purchaser of the firearms. In spite of that, Mr. Hoffman allowed SA Hager to complete the ATF Form 4473 and completed an FBI NICS background check on her to complete the transaction. Finally, Mr. Hoffman willfully and knowingly engaged in the straw purchase of firearms for Ms. Michelle Crews and Ms. Audra Crews by falsely listing himself as the actual purchaser of the firearms on the ATF Form 4473. Even though Mr. Hoffman knew he was not the actual purchaser of the firearms, he ran a FBI NICS background check on himself to complete the transaction. Based on Mr. Hoffman's acknowledgement and recorded statements, it is clear Mr. Hoffman understood what he was doing was illegal, but proceeded with the sale all the same.

6. Separate from the straw purchases, the multiple other GCA violations discovered during the inspection of the Licensee's Federal firearms licensee records and documents following the execution of the search warrant on Frazier's Pawn Shop were also willful. Prior to this inspection, the Licensee had been informed of the law and regulations, and its failure to comply therewith, in 2010, 2011, and 2014. Following the 2010 and 2014 inspections, the Licensee was issued a warning letter in which it was emphasized that future violations may be considered willful and could result in the revocation of its Federal firearms licensee. The Licensee was also given the benefit of a warning conference following the inspection in 2011, where ATF discussed the necessary corrective actions to be taken, and the Licensee advised of specific acts it would take to prevent future violations. Specifically, the Licensee gave assurances to ATF during this warning conference that in order to avoid future errors, omissions or discrepancies it would "[v]erify prior to completing the transfer of firearms to non-licensees that all the information called for or requested on the headers and instructions on the forms are recorded correctly and accurately." The Licensee also indicated that it would take corrective action to ensure it would properly record the acquisition and/or disposition of all firearms in its Acquisition and Disposition Book in a timely manner. These assertions proved false, as each of the violations discovered in the most recent inspection of the Licensee's Federal firearms licensee records and documents were previously addressed following the 2010, 2011, and 2014 inspections. In other words, each of the violations in its records and documents are repeat violations, and thus ATF's inclusion of these

Page 10 - Final Notice of Denial of Application, Revocation Suspension and/or Fine of
Firearms License

violations as part of its basis for denying the renewal of the Licensee Federal
firearms license is justified.

7.  The Licensee placed blame for not only the multiple straw purchases, but also its
    poor record keeping, principally on its former employee, Mr. Hoffman. However,
    this argument is without merit.  First, the Licensee openly acknowledged at the
    hearing that it was responsible for its employees.  The Licensee therefore cannot
    now reasonably expect to be held exempt and immune from the actions of its
    employees simply because Mr. Hoffman may, in fact, have participated in the
    behavior that gives rise to ATF's decision to deny the renewal of the Licensee's
    Federal firearms license.  Second, there is at least some evidence that suggests
    the Licensee was not wholly "in the dark" concerning Mr. Hoffman's actions –
    particularly as it relates to the straw purchases in which Mr. Hoffman either
    facilitated or directly engaged – and may have even authorized the transactions.
    Finally, this "rogue employee" defense has been previously rejected by the
    Federal Circuit Courts that have weighed in on the issue.  For example, the Fifth
    Circuit heard and recently ruled on essentially this exact same argument in
    *Fairmont Cash, Mgmt., L.L.C. v. James*, 858 F.3d 356 (5th Cir. 2017).  In that
    case, in response to a "rogue employee" argument, the Fifth Circuit relied upon
    language out of the Seventh Circuit, which establishes, "where . . . the licensee is
    a corporation, it is chargeable with the conduct and knowledge of its employees."
    *Id*. at 362-3 (*citing Stein's, Inc. v. Blumenthal*, 649 F.2d 463, 467-68 (7th Cir.
    1980).[1]  Based on this reasoning, the Fifth Circuit held, "[the FFL] *is* vicariously
    liable for the illegal acts of its employees regardless whether it approved of them.
    We reject its argument to contrary." *Id*. at 363 (emphasis in original).
    Accordingly, I reject these arguments raised by the Licensee now.

8.  I conclude that the Licensee willfully violated the provisions of the GCA and the
    regulations issued thereunder. Accordingly, as provided by 18 U.S.C. § 923(d) and
    27 C.F.R. § 478.72, the application for renewal of the Federal firearms license held
    by the Licensee, is hereby DENIED.

Dated this 8 +h day of October, 2019.

Michael F. Fronczak
Director, Industry Operations Washington Field Division
Bureau of Alcohol, Tobacco, Firearms and Explosives United States Department of Justice

---

[1] *See also Moreno v. Bureau of Alcohol, Tobacco, Firearms, Explosives*, 113 F. Supp. 3d 916, 923 (W.D. Tex. 2015)
(finding "a business entity's federal firearms license may be revoked . . . because of the willful violations by the
company's employees."); *Arwady Hand Trucks Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 763 n. 12 (S.D.
Tex. 2007); *Vineland Fireworks Co. v. ATF*, 544 F. 3d 509, 521-22 (3d Cir. 2008) (in similar explosives regulatory
scheme licensee is responsible for violations attributable to employee).