**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DAVID FRAZIER, II, d/b/a
FRAZIER'S PAWN SHOP,**

        **Petitioner,**

**v.**

                                     **Civil Action No. 3:19-cv-00208**

**MICHAEL F. FRONCZAK,
Director of Industry Operations
Washington Field Division
Bureau of Alcohol, Tobacco,
Firearms and Explosives
90 K Street, N.E., Suite 1102
Washington, DC  20226**

        **Respondent.**

**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

      Respondent, Michael F. Fronczak, Director of Industry Operations, Washington Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), by and through counsel, William J. Powell, United States Attorney for the Northern District of West Virginia, and Erin K. Reisenweber, Assistant United States Attorney for said district, now submits the following memorandum in support of his motion for summary judgment.

**I.**       **BACKGROUND**

      Petitioner David Frazier, II, ("Mr. Frazier") through counsel, filed a petition for *de novo* review pursuant to 18 U.S.C. § 923(f)(3) requesting the Court to review the revocation of his Federal Firearms License (FFL) by Michael Fronczak, Director, Industry Operations (DIO), Washington Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice.  [ECF No. 1].  DIO Fronczak revoked the license after undisputed

evidence at the August 21, 2019 FFL revocation hearing established that Mr. Frazier knew and understood the record-keeping and other requirements of the Gun Control Act but, nevertheless, was plainly indifferent to the requirements. *See* Tab IV of the Certified Administrative Record, Final Notice of Denial of Application. This Court, and several other Courts, have held that a single violation of the Gun Control Act constitutes sufficient grounds for revocation of an FFL. The record demonstrates that Mr. Frazier willfully violated the Gun Control Act on over one hundred occasions by selling firearms to a felon, failing to record the acquisition and/or disposition of multiple firearms, failing to properly keep and record ATF Forms 4473, Firearms Transactions Records, and failing to comply with other laws and regulations regarding the distribution of firearms. Accordingly, this Court should sustain the denial of renewal application of Mr. Frazier's license.

## II.  APPLICABLE LAW AND PROCEDURE

Title 18, United States Code, Section 923(e) provides in pertinent part that the Attorney General may, after notice and opportunity for hearing, revoke a license issued under the Gun Control Act of 1968, Title 18, United States Code, Chapter 44, if the licensee has committed any willful violations of the GCA.[1] Section 923(f)(1) provides that any person whose license has been revoked shall receive written notice from the Attorney General stating specifically the grounds

---

[1] The authority to regulate the firearms industry under the Gun Control Act of 1968 previously was delegated to the Secretary of the Treasury. However, when the Bureau of Alcohol, Tobacco, Firearms and Explosives was transferred to the Department of Justice from the Department of the Treasury as part of the Homeland Security legislation enacted in January 2003, the authority under the GCA was delegated to the Attorney General. Accordingly, precedential case law cited *infra* may refer to the Secretary of the Treasury rather than the Attorney General.

upon which the license was revoked. The licensee, after receipt of notice, may request a hearing within 15 days of receipt thereof. *See* 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.73. The hearing is held before an ATF Director of Industry Operations (DIO), acting on behalf of the Attorney General, whose duty is to conduct the hearing and to act as the deciding official following a full review of the matters submitted. After a hearing is held and if the DIO does not reverse his decision, section 923(f)(3) allows the aggrieved party to make a petition for de novo review to the United States District Court any time within 60 days of receipt of the DIO's decision. In any proceeding held pursuant to section 923(f)(3), the District Court *may*, but is not required to, consider any evidence submitted by the parties even if such evidence was not presented at the administrative hearing.

III.    **PROCEDURAL HISTORY**

Frazier's Pawn Shop is a Federal Firearms Licensee (Licensee) located in Martinsburg, West Virginia. Mr. David Frazier, the owner of Frazier's Pawn Shop, has operated the business since 2009. *See* Tab III of the Certified Administrative Record, Hearing Transcript (HT) at 8, 79. In June 2009, a qualification inspection was conducted for the Licensee where an ATF Industry Operations Investigator (IOI) explained the laws and regulations which apply to an FFL, including but not limited to, how to conduct business as a firearms dealer and how to properly maintain the records required for conducting the business. Mr. Frazier was present for this qualification inspection and signed an acknowledgement that the ATF IOI explained and answered all questions pertaining to the applicable regulations. *See* Government Exhibit 7 (G-7); HT at 76.

Beginning on or about April 26, 2010, ATF began a compliance inspection of Frazier's Pawn Shop. *See* Government Exhibit 1 (G-1). At the completion of this inspection, it was determined that Mr. Frazier had failed on eighteen (18) occasions to properly record the disposition of firearms in his Acquisitions and Disposition (A&D) records and had failed on one (1) occasion to conduct a National Instant Criminal Background Checks System (NICS) inquiry as required by law. *See* Government Exhibit 1 (G-1). Additionally, as a result of the inspection, Mr. Frazier was cited for twenty-two (22) violations wherein he had failed to properly complete Firearms Transaction Records, ATF Form 4473, as required. After this inspection, Mr. Froncazk served Mr. Frazier with a Report of Violations (ROV) on May 7, 2010 informing him of the violations of this inspection. *Id.* In addition, a Warning Letter was served on Mr. Frazier reminding him that future violations may be considered willful and could result in the revocation of its FFL. *Id.*

Beginning on or about December 12, 2011, ATF conducted another compliance inspection of Frazier's Pawn Shop. *See* Government Exhibit 1 (G-1). At the completion of this inspection, it was determined that Mr. Frazier had again failed on thirteen (13) occasions to properly record the disposition of firearms in the A&D records and had again failed to conduct a NICS inquiry as required by law. *Id.* Additionally, with respect to the Firearms Transaction Records, ATF Form 4473, Mr. Frazier was again cited for six (6) violations wherein he had failed to properly maintain these records. *Id.* As a result of this inspection, an ROV was served on Mr. Frazier on March 14, 2012 informing him of the violations from this inspection. *Id.* Mr. Frazier also attended a Warning Conference on July 10, 2012 wherein the violations from the 2011 inspection and proper

4

compliance were discussed in detail with ATF officials.  *See* Government Exhibit 1 (G-1).  The following day, ATF sent Mr. Frazier another Warning Letter reminding him that future violations may be considered willful and could result in the revocation of its FFL. *Id*. and Government Exhibit G-10.

Beginning on or about August 12, 2014, ATF conducted another compliance inspection of Frazier's Pawn Shop.  *See* Government Exhibit 1(G-1).  At the completion of this inspection, it was determined that Mr. Frazier had once again failed on twenty-five (25) occasions to properly record the disposition of firearms in his A&D records.  *Id*.  With respect to the Firearms Transaction Records, ATF Form 4473, Mr. Frazier was again cited for twenty-eight (28) violations for failure to properly maintain these records. *Id.*  It was also determined that Mr. Frazier had once again failed to report the sale of multiple handguns to an individual.  *Id.*  Following the inspection, ATF served Mr. Frazier with an ROV on Mr. Frazier on November 4, 2014 informing him of the violations from this inspection.  *Id.*  Once again, ATF sent Mr. Frazier a Warning Letter reminding him that future violations may be considered willful and could result in the revocation of its FFL. *See* Government Exhibit 1.  *Id.*

On or about January 24, 2018, ATF Special Agents searched Frazier's Pawn Shop pursuant to a Federal search warrant after having conducted three (3) controlled straw purchases, (illegal purchases of firearms by felons/out-of-state resident) from the business premises.  *See* Government Exhibit 1 (G-1).  Following the execution of the search warrant, ATF conducted another compliance inspection of Frazier's Pawn Shop.  As a result of the evidence obtained by ATF

Special Agents and the subsequent inspection, a Notice to Deny Application for License, (a renewal of license application) was served on Mr. Frazier.  *See* Government Exhibit 1 (G-1).  The basis of the renewal denial was premised on willful violations with respect to the facilitation of illegal straw purchases of a firearm (including the sale of firearms to a felon) in five (5) instances, as well as a number of repeated record-keeping violations, which included failing to enter the disposition of eight (8) firearms into the A&D record; failing to report the sale of multiple handguns to an individual in two (2) instances; and failing to complete properly Firearms Transaction Records, ATF Form 4473 in 160 instances, as detailed *supra*.  *Id*.

Mr. Frazier requested a hearing, which was held on August 21, 2019,  before Washington Field Division DIO Michael Fronczak at the ATF Satellite Office located at 40 Compass Pointe, Martinsburg, West Virginia. *See* Government Exhibits G-2, G-3, and G-4 and Tab I of the Certified Administrative Record.  Appearing pro se, Mr. Frazier had the opportunity to present evidence and to cross-examine the Government witnesses.  Mr. Frazier also testified on his own behalf.  James Vann, ATF Associate Chief Counsel and Michael L. Boyer, Division Counsel for the Washington Field Division represented the Government.  Keith W. Martin, ATF Special Agent, Washington Field Division, and Eileen Valls, ATF Industry Operations Investigator (IOI) testified on behalf of the government.  *See* HT, at 6-7.  At the hearing, Mr. Frazier did not challenge the violations nor did he challenge he allegations that the violations were willful.  *See* HT, at 123-24, 128-29.

On October 8, 2019, DIO Fronczak issued a Final Notice of Denial of Application, ATF Form 5300.13 to Mr. Frazier.  *See* Tab IV of Certified Administrative Record.  Mr. Frazier received

the notice of denial on October 10, 2019.  *Id.*  DIO Fronczak found that the evidence collected by

ATF CE and the subsequent compliance inspection established that:

> 1.      On April 21, 2017, licensee's representative falsely completed an ATF Form 4473, entered incorrect information into their acquisition and disposition record and improperly ran a NICS background check on himself for the purchase of a Remington shotgun (Model 870; 20 gauge; S/N C925158), which he actually sold and transferred to Michele CREWS in violation of 18 U.S.C. §§ 923(g)(1)(A), 922(t)(1), and 924(a)(1)(A), and 27 C.F.R. §§ 478.102(a), 478.124(c)(1), 478.125(e) and 478.128(a).

> 2.      On July 29, 2017, licensee's representative falsely completed an ATF Form 4473, entered incorrect information into their acquisition and disposition record and improperly ran a NICS background check on himself for the purchase of a Glock pistol (Model 19; 9mm caliber; S/N AMCS728), which he actually sold and transferred to Audra CREWS, who was eighteen years of age at the time of the handgun purchase, in violation of 18 U.S.C. §§ 923(g)(1)(A), 922(t)(1), 924(a)(1)(A), and 922(x), and 27 C.F.R. §§ 478.102(a), 478.124(c)(1), 478.125(e) and 478.128(a).

> 3.      On October 18, 2017, licensee's representative falsely completed an ATF Form 4473, entered incorrect information into their acquisition and disposition record and improperly ran NICS background check on a person other than the actual purchaser and facilitated the straw purchase of a Hi-Point rifle (Model 4595; .45 caliber; S/N R55185) to an individual with a Virginia driver's license, portrayed by an ATF Undercover (UC) agent, for the actual purchaser, portrayed by an ATF confidential informant (CI) with a felony conviction, who the licensee's representative knew or reasonable should have known was a prohibited person in violation of 18 U.S.C. §§ 922(d)(1), 923(g)(1)(A), 922(t)(1), and 924(a)(1)(A), and 27 C.F.R. §§ 478.102(a), 478.124(c)(1), 478.125(e) and 478.128(a).

> 4.      On October 24, 2017, licensee's representative falsely completed an ATF Form 4473, entered incorrect information into their acquisition and disposition record and improperly ran NICS background check on a person other than the actual purchaser and facilitated the straw purchase of a Springfield pistol (Model XD-9; 9mm caliber, S/N GM979645) to an individual with a West Virginia driver's license,

portrayed by an ATF UC agent, for the actual purchaser, portrayed by an ATF CI with a felony conviction, who the licensee's representative knew or reasonable should have known was a prohibited person in violation of 18 U.S.C. §§ 922(d)(1), 923 (g)(1)(A), 922(t)(1), and 924(a)(1)(A), and 27 C.F.R. §§ 478.102(a), 478.124(c)(1), 478.125 (e) and 478.128(a).

5.       On January 18, 2018, licensee's representative falsely completed an ATF Form 4473, entered incorrect information into their acquisition and disposition record and improperly ran NICS background check on a person other than the actual purchaser and facilitated the straw purchase of a Springfield pistol (Model XD-45; .45 ACP caliber, S/N GM403521) and an FN pistol (Model FNS-9; 9mm caliber; S/N GKU0026569) to an individual with a West Virginia driver's license, portrayed by an ATF UC agent, for the actual purchaser, portrayed by another ATF UC agent, who the licensee's representative knew or reasonable should have known was an out-of-state resident in violation of 18 U.S.C. §§ 922(b)(3), 923(g)(1)(A), 922(t)(1) and 924(a)(1)(A), and 27 C.F.R. §§ 478.102(a), 478.124(c)(1), 478.125(e) and 478.128(a).

6.       Licensee engaged in approximately forty-seven (47) willful violations (on twenty-nine (29) ATF Form 4473) of 18 U.S.C. §§ 922(m), 923(g)(1)(A), and 27 C.F.R. §§ 478.21(a) and 478.124(c) for transferring a firearm without first completing accurately all appropriate sections (such as questions 11.a, 16, 22, 23 and 29) of ATF Form 4473.

7.       Licensee engaged in approximately sixty-six (66) violations (on forty (40) ATF Form 4473) of 18 U.S.C. §§ 922(m), 923(g)(1)(A), and 27 C.F.R. § 478.124(c)(1), for transferring a firearm without first requiring the transferee provide the personal identifying information (such as name, residential address, place of birth, citizenship, etc.) required by ATF Form 4473.

8.       Licensee engaged in approximately five (5) violations (on five (5) ATF Form 4473) of 18 U.S.C. §§ 922(m), 922(t)(1)(c), and 923(g)(1)(A), and 27 C.F.R. § 478.124(c)(3)(i) for failing to verify and properly record the identity of the transferee by examining a valid government-issued identification document (as defined in 27 C.F.R. § 478.11).

9.       Licensee engaged in approximately thirty-six (36) violations of

18 U.S.C. §§ 922(m), 922(t), and 923(g)(1)(A), and 27 C.F.R. § 478.124(c)(3)(iv) for failing to record all NICS transaction information on ATF Form 4473 (questions 19.a, 19.c, and 19.d) prior to the transfer of a firearm.

10.　　　Licensee violated 18 U.S.C. §§ 922(m) and 923(g)(1)(A), and 27 C.F.R. § 478.124(c)(4) for failing to enter correct information regarding the manufacturer, serial number, and caliber/gauge of the firearm to be transferred on ATF Form 4473 (question 27) prior to the transfer of the firearm.

11.　　　Licensee engaged in approximately five (5)  violations (on five (5) ATF Form 4473) of 18 U.S.C. §§ 922(m), 923(g)(1)(A), and 27 C.F.R. § 478.124(c)(5), for failing to properly sign and/or record the correct date of transfer of a firearm on ATF Form 4473.

12.　　　Licensee engaged in approximately two (2)  violations of 18 U.S.C. § 922(g)(3) and 27 C.F.R. § 478.126a, involving four (4) handguns, for failing to timely or correctly report the sale of two or more pistols, or revolvers, or combination thereof, to an unlicensed person on the same day or within five consecutive business days.

13.　　　Licensee engaged in approximately eight (8) violations of 18 U.S.C. § 922(m) and 923(g)(1)(A), and 27 C.F.R. § 478.125(e) for failing to completely, accurately, and timely record information (such as the fact of disposition, the date of disposition, the transferees name and address) into the Acquisition and Disposition record.

14.　　　Licensee violated 18 U.S.C. § 922(t)(1)(A) and 27 C.F.R. § 478.102(a)(1) for failing to conduct a NICS background check on a purchaser of a firearm.

*See* Tab IV of Certified Administrative Record.

DIO Fronczak, at the request of Mr. Frazier, stayed the effective date of revocation through and including January 22, 2020, while Mr. Frazier filed the instant Petition for de novo judicial review pursuant to 18 U.S.C. § 923(f)(3).  *See* Tab V of Certified Administrative Record.  DIO

Fronczak later extended this stay several times, through and including June 21, 2020, each time at the request of Mr. Frazier. *Id.*

On December 9, 2009, Mr. Frazier, through counsel, filed a Petition for Judicial Review seeking to overturn the denial of his application, pursuant to 18 U.S.C. § 923(f)(3).  [ECF No. 1]. The Petition does not challenge the violations nor does it dispute the factual basis for any of the violations; rather, Petitioner contends that the actions of Mr. William Loren Hoffman[2], Mr. Frazier's employee, should not be imputed to Mr. Frazier.

## IV.    SUMMARY JUDGMENT IS APPROPRIATE AS THE FACTS ARE UNDISPUTED

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment should be granted if there is no genuine dispute as to material fact, and if the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing that there is no genuine dispute as to material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).  The moving party need not present evidence, and need only point out the lack of any genuine dispute as to material fact.  *Celotex*, 477 U.S. at 323-325.  Once the moving party has met this burden, the non-moving party must set forth evidence of specific fact showing the existence of a genuine issue for trial.  *Id.; Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-249 (1986); *Adickes,* 398 U.S at 160, n.22; *Krupa*, 732 F. Supp. at 505.  The non-moving party's burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushita*

---

[2] Hoffman pled guilty in August 2019 to one count of Making False Entry in Records by Federal Firearms Dealer in this court in Criminal Action Number 3:18CR61.

10

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Instead, the non-moving party must present facts such as a reasonable jury could find in its favor.  *Id.*

The facts of this case are undisputed and in this situation, wherein the undisputed facts establish violations of the Gun Control Act, the Government is entitled to summary judgment as a matter of law.  *See e.g. DiMartino v. Buckles,* 129 F. Supp. 2d 824, 827 (D. Md. 2001), *affirmed DiMartino v. Buckley,* (Buckles) 19 Fed. Appx. 114, (4th Cir. 2001). In an appeal of an agency action, a certified administrative record, unless somehow contradicted, satisfies the Agency's initial burden of demonstrating the absence of material fact. *American Arms Int'l v. Herbert*, 563 F.3d 78, 86 n.12 (4th Cir. 2009).  In conducting a de novo review, "the court reviews the administrative record, which 'enjoys a presumption of verity.'" *Gossard v. Fronczak*, 206 F. Supp. 3d 1053, 1058 (D. Md. 2016) (citing *American Arms Int'l*, 563 F.3d at 86 n. 12.   As part of its review, the court must determine whether ATF was authorized to deny the application. 18 U.S.C. § 923(f)(3); *MEW Sporting Goods, LLC v. Johansen,* 992 F.Supp.2d 665, 677 (N.D.W.Va.2014).

The Court now has before it the complete certified administrative record, including the transcript from the Revocation/Denial of Renewal Hearing, in which Petitioner acknowledges that his FFL was responsible for over one hundred violations of the Gun Control Act.  *See* HT, at 123-24, 128-29.  These violations include a number of record-keeping violations, to include failing to accurately complete ATF Form 4473, failing to properly record firearms in the A&D record, failing to report the multiple sale of handguns, and failing to conduct a NICS background check

11

on a purchaser of a firearm, as well as violations of facilitating the straw purchase of multiple firearms to multiple buyers, including a felon.

Since the facts are undisputed, this Court can decide this case on the Motion for Summary Judgment without holding an unnecessary evidentiary hearing and courts have routinely done so. *See e.g. American Arms Int'l*, 563 F.3d at 86 n12; *DiMartino*, 129 F. Supp. 2d at 827; *T.T. Salvage Auction Co., Inc. v. Secretary of Treasury*, 859 F. Supp. 977, 979 (E.D. N.C. 1994); *Al's Loan Office Inc. v. United States Dept. of Treasury*, 738 F. Supp. 221, 223 (E.D. Mich. 1990); *Cucchiara v. Secretary of Treasury*, 652 F.2d 28, 30 (9th Cir. 1981); *see also Mayesh v. Schultz*, 58 F.R.D. 537, 539 (S.D. Ill. 1973); *Fin & Feather Sport Shop, Inc. v. United States Treasury Dept.*, 481 F. Supp. 800, 806-807 (D. Neb. 1979).

Further, Title 18 U.S.C. § 923(f) specifically provides that:

> If after a hearing held under paragraph (2) the Attorney General decides not to reverse the decision to deny an application . . . the Attorney General shall give notice to the aggrieved party. The aggrieved party may . . . file a petition with the United States District Court . . . In a proceeding conducted under this subsection, the court *may* consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing . . .

(emphasis added).

Thus, the standard is permissive. Although the Court *may* consider additional evidence, it may also uphold the decision of ATF to deny an application for an FFL, or to revoke such a license, based solely upon the administrative record. *See DiMartino*, 19 Fed. Appx. At 116 ("Neither did the District Court abuse its discretion in declining to hold an evidentiary hearing. A good reason to hold such a hearing must either appear in the administrative record or be presented by the party

12

petitioning for judicial review."); *Cucchiara*, 652 F.3d at 30 ("[I]t is clear that the District Court did not abuse its discretion in ruling without an evidentiary hearing."); *Perri v. Department of Treasury*, 637 F.2d 1332, 1335 (9th Cir. 1981) ("[W]e conclude the District Court did not abuse its discretion in ruling without an evidentiary hearing.  The Court expressed its intention to avoid a repetitive hearing."); *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco & Firearms*, 348 F. Supp. 2d 1299, 1306 (S.D. Ala. 2004) ("Nonetheless, that the Gun Control Act provides for *de novo* review of administrative decisions is not to vest a firearm dealer with an absolute right to an evidentiary hearing in appealing from an adverse ATF decision.  Case law is to the contrary. [B]efore an evidentiary hearing is appropriate a good reason to hold such a hearing must either appear in the administrative record or be presented by the party petitioning for judicial review.")(internal citation omitted); *Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671, 673 (N.D. Ill. 2004) ("'De novo review' may be confined to the administrative record . . . "); *see also DiMartino*, 129 F. Supp. 2d at 827.

Moreover, entry of summary judgment is particularly appropriate in this case as several courts have held that *any single violation* of the Federal statutes or regulations controlling the firearms industry can be the basis for denying an application for a new license or revoking an existing license.  *See American Arms Int'l,* 563 F.3d at 86; *Appalachian Resources Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004); *Willingham Sports, Inc.*, 348 F. Supp. 2d at 1308; *Article II Gun Shop v. Ashcroft,* 2005 WL 701053, at \*3 (N.D. Ill. Mar. 25, 2005); *Breit & Johnson Sporting Goods, Inc.*, 320 F. Supp. 2d at 678; *Cook v. Herbert,* 2004 WL 40525, at \*2 (W.D. Va.

Jan. 5, 2004); *Trader Vic's Ltd. v. O'Neill*, 169 F. Supp. 2d 957, 963 (N.D. Ind. 2001); *DiMartino*, 129 F. Supp. 2d at 832.  In the instant case, the Government has proven not just one violation of the Gun Control Act, but over a hundred, in addition to the straw purchase of multiple firearms by multiple buyers.

To the extent that noncompliance was attributable to the acts of another employee, namely Mr. Hoffman, Mr. Frazier is accountable for the conduct of his employees under the doctrine of respondent superior.  In *Fairmount Cash Management, LLC v. James,* 858 F. 3d 356 (5th Cir. 2017), the Fifth Circuit affirmed the revocation of a FFL in part based on a factual scenario very similar to the case at hand, where an employee of the business engaged in straw sales that were part of an ATF undercover operation. *Id.* at 358.  Additionally, just as in this case, after the criminal investigation, which included the execution of search warrants, ATF conducted an inspection which revealed record-keeping violations and ATF initiated revocation proceedings.  *Id.*  Just as in this case, the firearms licensee admitted the violations and acknowledged it understood its obligations under the GCA.  *Id.* at 362.  The Fifth Circuit rejected the theory that its employee was a "rogue employee" and that the FFL was not responsible for the employee's actions.  The Court held that the FFL "is vicariously liable for the illegal acts of its employees regardless whether it approved of them.  We reject its argument to the contrary.  [Employee's] multiple violations of the Gun Control Act are attributable to [the FFL] and authorized the ATF to revoke its FFL.  Summary Judgment was proper on this basis."  *Accord Stein's Inc. v. Blumenthal*, 649 F.2d 463, 468 (7th Cir. 1980);  *see also Vineland Fireworks Co. v. ATF,* 544 F.3d 509, 521-22 (3d Cir. 2008) (Federal

explosives licensee involved in similar regulatory scheme as GCA responsible for records which were not properly kept based on illness of bookkeeper).  This principle holds true whether or not a FFL is a corporation. *Augustson v. Holder,* 728 F. Supp. 2d 1279, 1286 (D. N.M. 2010); *McLemore v. Treasury Dept.,* 317 F. Supp. 1077, 1079 (N.D. Fla. 1970) (non-corporate FFL responsible for acts of employee under the doctrine of respondent superior").

### A.   PETITIONER KNEW THE REGULATIONS WHICH APPLIED TO HIM AS AN FFL AND KNEW HIS RESPONSIBILITY FOR THE CONDUCT OF HIS EMPLOYEES

Petitioner fully understood his responsibilities as a Federal Firearms Licensee as it relates to the Gun Control Act.  At the hearing, Industry Operations Investigator Valls explained the process by which ATF educates applicants during the initial qualification inspection and to licensees at each subsequent compliance inspection regarding all federal firearms regulations, including straw purchases, the recording of all acquisitions and dispositions, the proper completion of the ATF Form 4473, and the reporting of multiple sales.  *See* HT, at 76.  The three Acknowledgement of the Federal Firearms Regulations Forms signed by Petitioner were offered into the record at the hearing.  *See* Government Exhibits G-7, G-8, & G-9.  The Acknowledgement of the Federal Firearms Regulations Form signed by Petitioner's employee, Mr. Hoffman, acknowledging the same was also offered into the record.  *See* Government Exhibit G-11. Additionally, at the hearing, Petitioner acknowledged his understanding of his obligations under the law as a federal firearms licensee:

By Mr. Vann:

15

Q.  Number one, you do understand your obligations as a firearms dealer, correct?

A.  As far as --

Q.  Your obligations, what you're required to do, writing the 4733s [sic], keeping A&D book –

A.  Yes, sir.

Q.   -- those types of things?  You understand that's [sic] issues?

A.  Um-hum.

Q.  You've been briefed on those --

A.  Yes, sir.

Q.  -- and you acknowledge those; is that correct?

A.  Yes, sir.

Q.  So you know what your duties are and what your responsibilities are as a licensee to sell guns?

A.  Yes, and like I said, when I hired Bill [Hoffman], I thought that he was going to handle all that.

Q.  But you still understand as well, right?  I mean you're continuing to do it now.

A.  Yes.

*See* HT, at 129-130.

Furthermore, as noted, the Petitioner is responsible for the actions of his employees. Despite Petitioner's contentions to the contrary, the mere fact that the majority of violations are attributable to his employee, Mr. Hoffman, does not mitigate the conduct of Petitioner.  *See, e.g., Augustson,* 728 F. Supp. 2d at 1286; *McLemore*, 317 F. Supp. at 1079.

16

While the Petitioner asserts in his petition that he should not be held responsible under vicarious liability theory for the acts of Mr. Hoffman, the law provides otherwise.  Moreover, the Petitioner clearly acknowledged at the hearing an understanding of his responsibility for the actions of his employees:

By Mr. Vann:

Q:  Okay.  And you do also understand that you have responsibility for your employees?

A:  Yes.

*See* HT at 131.

### B.      THERE IS NO FACTUAL DISPUTE THE VIOLATIONS OCCURRED

In his findings of fact and conclusions of law, DIO Fronczak found that Petitioner willfully violated the Gun Control Act on over a hundred occasions by failing to accurately complete ATF Form 4473, failing to properly record firearms in the A&D record, failing to report the multiple sale of handguns, and failing to conduct a NICS background check on a purchaser of a firearm, in addition to facilitating straw purchases.  *See* Tab IV of the Certified Administrative Record. Petitioner acknowledged these violations during the Revocation/Denial of Renewal Hearing, but tried to shift all responsibility to his employee, Mr. Hoffman:

HEARING OFFICER FRONCZAK:  . . . Mr. Frazier, it's your turn to present evidence and anything -- any discussion you want to have regarding why your federal license renewal should be denied.

MR. FRAZIER:  The first thing I want to say is that obviously it appears that probably 99 percent of the paperwork is under William Hoffman.  You know, I guess I just relied on him, being him working at other gun shops in the past, and he told me he knew what he

17

was doing and he knew all about the paperwork and what needed to be done.  Obviously, that wasn't factual.

*See* HT at 123-124.

> HEARING OFFICER FRONCZAK:  Do you have anything else you'd like to say --
>
> MR. FRAZIER:  Just that --
>
> HEARING OFFICER FRONCZAK:  -- or state?
>
> MR. FRAZIER:  Just the same thing that I've iterated before, that as I stated, just going through, skimming through 99 percent of this, the violations were William Hoffman's responsibility.  And as far as the transactions he did, selling -- making straw purchases, whatever he has done, is solely on him.  I had nothing to do with it . . .

*See* HT at 128-129.

Petitioner, through counsel, also acknowledges the violations in his petition:

"It is *undisputed* that Mr. Hoffman, Petitioner's employee, had violated the firearms dealer regulations.  This fact was substantiated [by] ATF Federal agents and/or representatives during the ATF's CI undercover investigation, which also resulted in numerous recordkeeping errors and other violations of the federal regulations were uncovered."  *See* ECF No. 1, (emphasis added).

## C.   PETITIONER WILLFULLY VIOLATED PROVISIONS OF THE GUN CONTROL ACT

Petitioner willfully violated provisions of the Gun Control Act, because, at the hearing, the Government presented evidence that Petitioner knew of his legal obligations under the Gun Control Act and purposefully disregarded or was plainly indifferent to the requirements of the law.

18

As noted, the mere fact that the violations may be attributable to the agents or employees of Petitioner in no way alleviates Petitioner of his legal obligations under the Gun Control Act.

The majority of circuit courts, including the Fourth Circuit, agree that a willful violation of the Gun Control Act occurs when a licensee knew of his legal obligations under the law and fails to follow the law, showing plain indifference or purposeful disregard for the requirements of the law. *American Arms Int'l*, 563 F.3d at 83; *RSM v. Herbert,* 466 F.3d 316, 322 (4th Cir. 2006); s*ee also Simpson v. AG United States,* 913 F.3d 110, 114 (3d Cir. 2019) (nine Circuits have held that a licensee willfully violates the regulatory provisions of the GCA by showing a purposeful disregard or plain indifference to a known legal obligation,). Where a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA."); *Stein's Inc.*, 649 F.2d at 467; *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979); *Sturdy v. Bentsen,* 129 F.3d 122 (Table); 1997 WL 611765, at *2 (8th Cir. 1997)("To show a willful violation, the BATF had to prove licensee knew of the legal record keeping requirements and 'purposefully disregarded' or was 'indifferent to' them.")

Moreover, a *single* willful violation is sufficient to establish willfulness. *See* e.g., *American Arms Int'l*, 563 F.3d at 86; *Armalite Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008). Furthermore, the Fourth Circuit has held that bad purpose or evil motive is not required to establish willfulness. *Prino v. Simon,*, 606 F.2d 449, 451 (4th Cir. 1979) ("[n]o showing of malicious intent is necessary"); *Appalachian Res. Dev. Corp.*, 387 F.3d at 464 ("[w]e do not believe that the 'bad

19

purpose' standard . . . is controlling with regard to the . . . standard defining [a] willful violation."); *Lewin*, 590 F.2d at 269 ("There is no requirement of bad purpose as might be imposed were the Court faced with determining the definition of willfulness in a criminal prosecution."); *Willingham Sports, Inc.*, 348 F. Supp. 2d at 1310 (holding that no evidence of bad purpose required); *Breit & Johnson Sporting Goods, Inc.*, 320 F. Supp. 2d at 678-79; *Fin & Feather*, 481 F. Supp. at 804.

Additionally, while "mere mistakes" and "negligence" may not amount to willful violations of the Gun Control Act, *see e.g.*, *General Store, Inc. v. Van Loan*, 560 F. 3d 920, 923 (9th Cir. 2009), many courts have consistently held that violations become willful when errors continue despite repeated warnings.  *See RSM*, 466 F. 3d at 322 ("[W]hen such errors continue or even increase in the face of repeated warnings . . . one may infer as a matter of law that the licensee simply does not care about the legal requirements.  *At that point*, the failures show the licensee's plain indifference and therefore become willful.") (emphasis in original); *see also Borgelt v. Bureau of Alcohol, Tobacco, and Firearms*, 2009 U.S. Dist. LEXIS 89281, 2009 WL 3149436, 4 (W.D.Wash.)("[T]he government often proves willfulness by showing that a licensee repeatedly violated regulations despite knowledge of them and repeated warnings."); *Cucchiara,* 652 F.2d 28 (repeat record keeping violations constitute willful GCA violations); *Lewin v. Blumenthal,* 590 F.2d 268 (repeat failure to complete ATF Forms, failure to record transactions on ATF records and sales to three individuals who they had reason to believe were prohibited persons constitute willful GCA violations); *Moreno v. ATF*, 113 F. Supp. 3d 916, 923 (W.D. Tx. 2015) (violations are considered willful if the licensee has been informed of the regulations, warned of violations, and

continually violated those requirements); *McLemore*, 317 F. Supp. 1077 (failure to fully fill out ATF Form 4473 and properly maintain acquisition and disposition records constitute willful GCA violations); *T.T. Salvage Auction Co.*, 859 F. Supp. 977 (repeat violation of GCA record-keeping provisions constitute willful GCA violations). In the case at hand, Petitioner received multiple warning letters which explained to him that future violations could be viewed as willful and could result in the revocation of his license. *See* Government Exhibit G-10.

Petitioner Frazier's repeated record-keeping violations, which include a failure to properly record all acquisitions and dispositions, to properly complete the ATF Form 4473, to report multiple sales of handguns and to conduct a NICS background check on a purchaser of a firearm, clearly satisfies the standard. As noted above and as show at hearing, Petitioner knew of his record-keeping obligations and acknowledged such on multiple occasions. *See* Government Exhibits G-7, G-8, and G-9. Nevertheless, ATF inspections revealed that Petitioner has persistently committed record-keeping errors and omissions since its first compliance inspection in 2010. *See* Government Exhibit G-1. During each of Petitioner's three prior compliance inspections, ATF cited Petitioner for similar record-keeping violations, including failing to properly record all acquisitions and dispositions, failing to properly complete ATF Form 4473, failing to report multiple sales of handguns and failing to conduct a NICS background check on a purchaser of a firearm. *See* Government Exhibit G-1. ATF warned Petitioner after each inspection, through the use of warning letters and a warning conference with Petitioner, that future violations, repeat or otherwise, could result in the revocation of its federal firearms license. *Id.*

Petitioner now asserts that the bulk of these record-keeping errors and omissions were committed by his employee, Mr. Hoffman, and attempts to distance himself from his former employee. However, these self-serving arguments do not protect Petitioner from his obligations under the Gun Control Act. As elicited by IOI Valls at the hearing, Mr. Hoffman was Petitioner's firearms manager dating back as far as 2014. *See* HT, at 91-92. In fact, during ATF's compliance inspection in 2014 during which multiple record-keeping violations were found, Petitioner had delegated Mr. Hoffman to participate in the inspection and Mr. Hoffman was the one who went over the rules and regulations of the Gun Control Act with IOI Valls. *See* HT, 91-92; *see also* Government Exhibit G-11. Thus, Petitioner presents no justification for why the doctrine of *respondeat superior* should not be applied here as it has in other cases involving Federal firearms licensees being held responsible for the conduct of their employees.

Petitioner, through counsel, also aims to minimize his involvement with the straw purchases facilitated by Mr. Hoffman stating "there was no credible evidence adduced at the administrative hearing that Petitioner was aware of Mr. Hoffman's conduct other than the hearsay testimony from ATF Federal agents and/or representatives, which was without any corroboration." Contrary to Petitioner's assertions, however, hearsay is admissible at GCA administrative hearings as long as it is relevant and reliable. *See Nationwide Jewelry & Pawn, Inc. v. ATF*, 455 F. Supp. 2d 1379, 1383 (M.D. Ga. 2006); *Nat'l Lending Group, L.L.C. v. Mukasey,* 2008 WL 5329888, at *2-3 (D. Ariz. Dec. 19, 2008); c*f. Augustson*, 728 F. Supp. 2d at 1283-84 (public records exception). The evidence relating to the straw purchases presented at the hearing included

22

video/audio recordings, as well as the testimony of SA Martin, which evidence corroborated Mr. Hoffman's statements that Petitioner was aware of these straw purchase transactions. *See* Government Exhibit G-5; HT at 63-64. This evidence was not only relevant but also reliable, and therefore ATF was fully justified in relying upon this evidence to find Petitioner was aware of these straw purchase transactions. Nevertheless, even if this evidence were to be set aside and it was conceded that Petitioner was not aware of the straw purchase transactions, Petitioner would still be responsible under the doctrine of *respondeat superior* for the conduct of his employee, Mr. Hoffman.

<u>**CONCLUSION**</u>

Petitioner engaged in over one hundred willful violations of the administrative provisions of the Gun Control Act. These violations, which are undisputed by Petitioner, included record-keeping errors and omissions, as well as multiple straw purchases to multiple buyers, including a felon. ATF warned Petitioner on multiple occasions, via both warning letters and a warning conference, of the record-keeping violations and advised him that future violations may result in the revocation of Petitioner's license. These violations constitute classic willful violations as defined by virtually every Court that has defined the term, including the Fourth Circuit Court of Appeals, insofar as Petitioner understood the requirements of the law but disregarded or was plainly indifferent to the law's requirements and failed to follow the law. With no genuine dispute as to any material fact, the Respondent is entitled to judgment in its favor as a matter of law and, therefore, requests that this Court enter summary judgment on Respondent's behalf.

Respectfully submitted,


WILLIAM J. POWELL
UNITED STATES ATTORNEY

By:     *Erin K. Reisenweber*
        Erin K. Reisenweber
        Assistant United States Attorney
        217 West King Street, Suite 400
        Martinsburg, WV 25401
        (304) 262-0590
        (304) 262-0591 FAX
        Erin.Reisenweber@usdoj.gov



Of Counsel:

Michael L. Boyer
Jeffrey A. Cohen
ATF Office of Chief Counsel

24